**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**Harold MILLER, Herbert Charles and Milton Charles, Co-partners, d/b/a Miller-Charles and Company, Respondents.**

**Nos. 274, 306, Dockets 29186, 29296.**

United States Court of Appeals Second Circuit.

Argued Jan. 6, 1965.

Decided March 1, 1965.

Elliott Moore, Atty., N. L. R. B., Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B.), for petitioner.

Sanford H. Markham, New York City (Michael P. Graff, New York City, on the brief), for respondents.

Before LUMBARD, Chief Judge, and WATERMAN and HAYS, Circuit Judges.

HAYS, Circuit Judge:

The National Labor Relations Board seeks enforcement of two orders. In the first proceeding (No. 29186) the Board found that respondent violated Sections 8 (a) (1) and (2) of the National Labor Relations Act [1] by coercing its employees

1. 61 Stat. 140 (1947), as amended, 73 Stat. 525 (1959), 29 U.S.C. §§ 158(a) (1), (3) (1958 & Supp. V, 1964):

"(a) It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain or coerce employees in the exercise of the rights guaranteed in section 7;

"(2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it * * *

"(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization * * *."

in their exercise of their rights under Section 7 and by interfering with the formation of a shop committee. 146 N. L. R. B. No. 39 (1964). In the second proceeding (No. 29296) the Board held that respondents' no-solicitation rule was invalid and that the discharge of an employee for distributing union literature during nonworking hours in an area that the Board found was a nonworking area constituted a violation of Section 8(a) (3) and (1) of the Act.[2] We enforce both orders.

## I. Docket No. 29186

During the spring of 1963 a representative of Local 463, International Union of Electrical, Radio and Machine Workers, AFL–CIO, attempted to organize the employees of the respondent. By the end of May he had succeeded in getting authorization cards from seventeen of twenty-nine production department employees. On May 31 Stewart, general manager of respondent, addressed the employees of the department. In the course of his speech he said that if the employees chose an outside union to represent them "according to his knowledge of the financial status of the company, an outside union in his belief would make such outrageous demands that the company would not be able to afford it" and "would probably have to cut down the hours of the shop to about 40 hours a week and the shop would probably have to close completely in about a hundred and twenty days." He added that if the employees "wanted an inside union, * * * that he was willing to talk to any representative body of the employees." Later that day Stewart met with five employees to discuss improvements in working conditions and he promised to work out a contract on the following Monday, if he was satisfied

that a majority of the employees wished an inside union to represent them.

That same afternoon Caputo, the business representative of Local 463, requested recognition of Local 463. Stewart disputed the validity of the Local's authorization cards and refused it recognition.

The following Monday, June 3, Stewart's assistant brought a petition for representation by an employees' committee to the production department employees. They signed the petition in Stewart's presence. He then met with a four-man committee named in the petition as representatives and negotiated a contract with them recognizing the employees' committee and granting an immediate five cent an hour wage increase and other benefits.

While Stewart on the advice of a Board agent did not sign the contract with the committee, he did grant the wage increases and met with the committee to discuss grievances. Later in June Stewart spoke to shipping department employees in the same vein as he had spoken to the first group. With Stewart's assistance they also petitioned for representation by the employees' committee.

The Board ordered the employer to cease violating Section 8(a) (1) and (2) of the Act, to withdraw and withhold recognition from the employees' committee unless the committee is certified as bargaining agent, and to post the usual notices.

### A. Company Statements

The respondents contend that the Board erred in finding Stewart's speech coercive under Section 8(a) (1), because his statements were merely predictions and contained "no threat of reprisal or force or promise of benefit" within the meaning of Section 8(c) of the Act.[3]

---

2. See note 1 supra.

3. 61 Stat. 142 (1947), 29 U.S.C. § 158(c) (1958):

"The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this Act if such expression contains no threat of reprisal or force or promise of benefit."

■ It was within the power of the Board to find that, in the context into which Stewart's speech was fitted, his statement that representation by an outside union would probably lead first to a reduction in overtime and within 120 days to a complete shutdown, but that the Company would consider negotiating with an independent shop committee, was not protected by Section 8(c) of the Act and was violative of Section 8(a) (1).

The conclusion that Stewart's statements were a threat disguised as a prediction derives support from the fact that they were clearly not made in good faith. Stewart had no reason whatsoever to believe that negotiation with an outside union would result in a financial burden which his company could not sustain. "It seems clear that Congress did not intend to protect an unqualified assertion of such importance unless the utterer can show that he had some reasonable basis for it." International Union of Elec. Workers, etc. v. NLRB, 289 F.2d 757, 762–763 (D.C.Cir.1960).

## B. Encouragement of the Employees' Committee

The respondents also contest the finding that the Company violated Sections 8(a) (1) and (2) of the Act by interfering with and supporting the organization of the employees' committee. Their argument is that there is no evidence in the record that respondent actively interfered in the organization of the employees' committee, which they claim arose spontaneously among the employees themselves.

■ We hold that there was ample evidence on the basis of which the Board could find a violation of Section 8(a) (2). In his speech to the employees Stewart suggested the organization of an inside union as an alternative to the disastrous consequences of choosing an outside union. That same day Stewart conferred at length with a deputation of employees. On the next workday Stewart was present during the circulation of a petition for representation. One employee testified that Stewart himself circulated the peti-

tion. Stewart immediately recognized the Committee and negotiated and drafted a contract, granting wage increases and other benefits. The Board could properly find on this evidence that Stewart "interfered with" the organization of his employees and contributed "support" to it.

## II. Docket No. 29296

Early in June 1963 respondent posted the following "notice" on its bulletin board:

"This is to notify all personnel that it is a violation of company rules to engage in union solicitation on *company time* and *company property*. Violators are subject to disciplinary action.' (Emphasis in the original.)

On December 18, employee Vega was discharged for having distributed union leaflets the preceding day.

The Board ordered the employer to cease enforcing its no-solicitation rule, to reinstate Vega with back pay and to post the usual notices.

## A. Validity of the Company Rule

■■ The trial examiner dismissed that part of the General Counsel's complaint that alleged the Company rule as quoted was invalid. The trial examiner interpreted the bar against solicitation "on company time and on company property" not to prohibit solicitation on company property during nonworking time. The Board disagreed, holding the rule invalid under Section 8(a) (1) because it could be understood by employees to prohibit any solicitation on company premises regardless of whether or not on company time and was so understood by the foreman Wachs. The Board ordered the respondent to cease and desist from promulgating or enforcing a rule prohibiting solicitation during nonworking time or distribution of literature in nonworking areas. In the absence of any special circumstances shown by the Company to justify a rule of broader scope, we enforce the Board's order. See Republic Aviation Corp. v. NLRB, 324 U.S. 793, 803–805, 65 S.Ct. 982, 89 L.Ed. 1372

(1945); NLRB v. United Aircraft Corp., 324 F.2d 128 (2d Cir. 1963), cert. denied, 376 U.S. 951, 84 S.Ct. 969, 11 L.Ed.2d 971 (1963).

The true meaning of the rule might be the subject of grammatical controversy. However, the employees of respondent are not grammarians. The rule is at best ambiguous and the risk of ambiguity must be held against the promulgator of the rule rather than against the employees who are supposed to abide by it.

B. *Vega's Discharge*

[5] Having decided that the respondent's rule was invalid, we are then left with the issue whether the discharge of Vega violated Sections 8(a) (1) and (3), i. e., whether he was discharged for exercising rights protected under the Act.

The respondent gave as its reasons for discharge, besides the violation of the rule, Vega's neglect of his work and interference with the work of others. The trial examiner found that he was discharged only because of his distribution of union leaflets on December 17. The respondent apparently did not adequately distinguish between protected and non-protected distributions, and in the absence of a rule making a valid distinction that would be clear to employees, Vega's discharge had the effect of interfering with protected, organizational rights.

Enforcement of both orders granted.