**D'YOUVILLE MANOR, LOWELL, MASSACHUSETTS, INC.,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 75-1140.

United States Court of Appeals, First Circuit.

Argued Sept. 10, 1975.

Decided Nov. 13, 1975.

Reginald H. Howe, Boston, Mass., with whom John A. Perkins and Palmer & Dodge, Boston, Mass., were on brief, for petitioner.

Allison W. Brown, Jr., Washington, D. C., with whom Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Elliott Moore, Deputy Associate Counsel, and John F. Depenbrock, Jr., Washington, D. C., were on brief, for respondent.

Before COFFIN, Chief Judge, McEN-TEE, Circuit Judge, and THOMSEN,* Senior District Judge.

COFFIN, Chief Judge.

This case arises from an organizational campaign conducted by District 1199 Massachusetts, National Union of Hospital and Health Care Employees (the Union) at D'Youville Manor, Lowell, Massachusetts, Inc. (the Manor), a nursing home affiliated with the Sisters of Charity, Ottawa, Canada. In an unfair labor practice proceeding, the National Labor Relations Board found that the nursing home violated § 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a), by announcing a seniority pay scale and insurance benefits with the purpose of discouraging unionization, and by threatening and unlawfully reprimanding an employee for exercising rights protected by § 7 of the Act. The Board also found a violation of § 8(a)(3), 29 U.S.C. § 158(a)(3), in the discharge of an employee for engaging in union activities. Pursuant to § 10(f) of the Act, 29 U.S.C. § 160(f), the Manor petitions for review of all these findings, and, in addition, appeals from the denial of prehearing discovery. The Board has brought a cross application for enforcement of its cease and desist orders, and its order of reinstatement and back pay.

The § 8(a)(1) charge involving improper announcement of pay increases and benefits arises in peculiar circumstances. On March 25, 1974, during a period of intense union organizational activity, the Board of Trustees of the Manor gave tentative approval to the increases. The announcement and implementation of these changes were delayed subject to the approval of legal counsel. In the succeeding week, the employees requested to be informed of the action of the Trustees. On April 3, the Manor announced the tentative decision, and on April 22, it announced that the increases would be implemented. The Board found that the announcement of these benefits was calculated to influence em-

---

ployees to withdraw support for the union, and therefore, violated the Act.

In determining the propriety of an increase in benefits during the pendency of a union organizational campaign, both the date of the decision by management and the date of the announcement are relevant. *NLRB v. Rexall Chemical Co.*, 418 F.2d 603 (5th Cir. 1969). *See NLRB v. Styletek, Division of Panel-Bradford, Inc.*, 520 F.2d 275 (1st Cir. 1975). Here, there was sufficient evidence on the record as a whole to support the Board's finding that the Manor's decision to grant seniority wage increases and insurance premium benefits had the purpose of discouraging unionization.

The Manor asserts that the termination of federal restraints under the Cost of Living Council, which was expected on April 30, 1974, provided a proper business reason for granting the increases at that time. Once an employer produces a proper business justification, the ultimate burden is on the Board to show that the company was primarily motivated by an anti-union purpose. *NLRB v. Gotham Industries, Inc.*, 406 F.2d 1306 (1st Cir. 1969). While the impending relaxation of federal controls gives some legitimacy to the Manor's decision, other factors belie this justification. The cost of living guidelines never covered the many employees at the Manor who were earning less than $3.50 an hour. Moreover, the Manor had until recently resisted requests for these benefits on the grounds that its income was limited by state ratemaking regulation, and that the books showed a substantial deficit. Nothing in the record suggests that the financial condition of the Manor had improved when the decision was made.

The evidence presented at the hearing also tended to show that there was an intimate relationship between the wage and benefit issue and the campaign for unionization. For example, discussion of the increases and the union campaign occurred at the same winter meetings between employees and management.

The circumstances of the announcement of the increases, however, tends to negate coercive conduct on the part of the Manor. The administrative law judge properly acknowledged that the Manor could complain, with some merit, that the announcement and implementation of the proposed increases were prompted by the employees and the union. Nevertheless, it was well known within the nursing home, at the time of decision, that the subject of increases would be discussed at the regular Board of Trustees meeting in March. The Manor could not have reasonably assumed that there would be no employee pressure to learn of that meeting's outcome. The onset of predictable pressure after decision did not, as a matter of law, immunize the vulnerable decision to grant the increases from the strictures of the Act. We therefore hold that the Board could properly infer from the evidence on the record that the announcement of the wage and benefit increases was calculated to influence employees to withdraw support from the union.

The second § 8(a)(1) charge involves a written reprimand to Alan Solomont, an orderly at the nursing home, for his part in an incident involving the transfer of a union card during the working time in a working area of the home. At various other times, Solomont was orally threatened with disciplinary reprimands for solicitation activities in nonworking areas during nonworking time. In defense of the statutory charge, the Manor contends that it acted lawfully pursuant to its written rule which prohibits all unauthorized solicitation on the premises.

A rule prohibiting solicitation in nonworking time is presumed invalid absent some special justification. *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945). The Manor suggests that the rule was not enforced as written, and solicitation was permitted in nonworking areas of the nursing home frequented only by

employees. If this were so, evidence of the special requirements of a nursing home may well have rebutted the presumption of invalidity. *See NLRB v. Summit Nursing Convalescent Home,* 472 F.2d 1380 (6th Cir. 1973), *denying enf. to* 196 N.L.R.B. No. 110 (1972); *Guyan Valley Hospital,* 198 N.L.R.B. No. 28 (1972). The administrative law judge concluded, however, that the rule was administered and applied to union activities as broadly as it was written. We find this ruling to be supported by the evidence on the record as a whole. Consequently, we affirm the Board's determination that the rule could not constitute a valid defense to the § 8(a)(1) charge, and the finding that the Manor violated the Act in issuing the contested reprimand.[1]

This unlawful reprimand constituted the second written warning issued to Solomont during his employment at the Manor. Approximately one month later he was terminated under a long-standing rule authorizing discharge for accumulation of three written reprimands within a twelve month period. The general counsel charged, and the Board found, that Solomont was discharged because of his union activities in violation of § 8(a)(3) of the Act.

■ In reviewing the Board's findings and order, we begin with the law governing the burden of proof in establishing a discriminatory discharge. The burden is initially on the Board to establish an improper motivation for the action. If the employer, in response to such a showing, establishes a proper business reason, or good cause, to discharge the employee, the Board must show that anti-union animus was the dominant reason for the termination. *NLRB v. Fibers International Corp.,* 439 F.2d 1311 (1st Cir. 1971); *NLRB v. Billen Shoe Co.,* 397 F.2d 801 (1st Cir. 1968).

■ The Manor offered the three reprimand rule in defense of the discharge. The administrative law judge properly found that since one of the reprimands constituted an independent violation of the Act, invocation of the neutral rule could not establish good cause. Various other reasons were offered in defense of the discharge ranging from insubordination to violation of an informal smoking rule. The administrative law judge found the charge of insubordination unsupported by the evidence, and the smoking rule of so little consequence that it had never before generated a written reprimand.

Even if these charges amounted to good cause supporting a discharge, we find that the Board has sustained its burden in establishing that the discharge was primarily motivated by anti-union animus. Under the most unfavorable interpretation of the events leading to the discharge of Solomont, he could be charged with participation in conduct which created some hazard to the patients under his care.[2] By its own ad-

---

1. Under the Manor's version of events, Solomont interrupted his work and that of the card signer while in the room of a patient. The administrative law judge discounted this description of the incident, finding that only a fleeting interruption of work took place in the hallway of the home. Under its version of the events the Manor could have possibly defended the reprimand on the grounds that the alleged solicitation amounted to impermissible dereliction of duty substantially interfering with the treatment of patients. *See NLRB v. Miller,* 341 F.2d 870, 874 (2d Cir. 1965). The Manor, however did not raise this defense on review in this court.

2. The employees of the east wing of the nursing home regularly took a cigarette and coffee break in the nurses wash room while waiting for the patients to finish breakfast. In order to insure adequate supervision of the patients during this period, the wing instituted an informal, non-written rule that no more than two employees should take this break at the same time. On the morning in question, four to five employees were on this break simultaneously, leaving only one nurse's aide on duty. According to the evidence presented at the hearing the two employees rule was frequently violated, and was enforced, until this incident, through oral requests that the employees return to work.

mission, however, the Manor has never discharged a regular employee who has accumulated less than three reprimands unless a serious offense, such as abuse of narcotics or alcohol, was involved. The charges here, even if viewed as more serious than the administrative law judge determined, do not approach that level of severity.

■ The Manor contends that even if Solomont's discharge was a violation of § 8(a)(3), he should be barred from reinstatement because he failed to indicate that he had a college degree on his application form. The Board's power to order the reinstatement of an unlawfully discharged employee is "a broad discretionary one, subject to limited judicial review." *Fibreboard Corp. v. NLRB,* 379 U.S. 203, 216, 85 S.Ct. 398, 406, 13 L.Ed.2d 233 (1964). In recent cases, the Board has found reinstatement inappropriate when it is reasonable to infer that, had the employee answered truthfully the questions on an application form, the employer would not have hired him. *W. Kelly-Gregory, Inc. and Thomas P. Barrett,* 207 N.L.R.B. No. 96 (1973). *See Westinghouse Learning Corp. and Claudies Banks,* 211 N.L.R.B. No. 4 (1974). The Manor asserts that it would not have hired Solomont if it knew of his college education because he would have been overqualified. The Board did not have to credit this statement: Solomont did inform the director of nursing personnel of his background subsequent to his hiring and no action was taken as a result. Accordingly, we find no abuse of discretion in the order to reinstate Solomont with back pay.

■ The final point on appeal contests the denial of prehearing discovery of affidavits of witnesses prepared by the General Counsel. While the Manor does not assert the absence of pre-hearing discovery procedures constitutes a denial of due process, a position which has been rejected in several circuits, e. g., *NLRB v. Interboro Contractors, Inc.,* 432 F.2d 854 (2d Cir. 1970); *NLRB v. Vapor Blast Mfg. Co.,* 287 F.2d 402 (7th Cir. 1961), it suggests that we should follow the practice of the fifth circuit and construe § 10(b) of the Act and 29 C.F.R. § 102.30 to provide for pre-hearing discovery for good cause shown. *NLRB v. Miami Coca-Cola Bottling Co.,* 403 F.2d 994 (5th Cir. 1968); *NLRB v. Safway Steel Scaffolds Co.,* 383 F.2d 273 (5th Cir. 1967).

We have previously considered and declined to provide for discovery in unfair labor practice proceedings before the Board. *NLRB v. Diamond Standard Fuel Corp.,* 437 F.2d 1163 (1st Cir. 1971). Although the treatment of the issue in *Diamond* was cursory, we are not disposed to adopt a different position here. The Manor asserts it had good cause for pre-hearing discovery because two of the employees involved in the incident giving rise to the unfair labor practice charges had left their employment. It was, therefore, inconvenient to obtain their statements prior to hearing since the Manor did not know whether the testimony of the general counsel's witnesses would contradict or support that of the Manor supervisors. But turnover of employees is a common event in American business, and the absence of employee witnesses must occur in a substantial proportion of unfair labor practice proceedings. To acknowledge such absence to be "good cause" would make discovery the rule rather than the exception. The asserted inconvenience in this case, therefore, cannot constitute good cause for the purpose of discovery under any interpretation of the relevant statute and regulations.

*The orders of the Board are enforced.*