NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

BETH ISRAEL HOSPITAL, Respondent.

No. 76–1318.

United States Court of Appeals,
First Circuit.

Argued Jan. 4, 1977.

Decided April 29, 1977.

David F. Zorensky, Atty., Washington, D. C., with whom John S. Irving, Jr., Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and Michael S. Winer, Atty., Washington, D. C., were on brief, for petitioner.

Robert Chandler, Boston, Mass., with whom Stoneman, Chandler & Miller, Boston, Mass., was on brief, for respondent.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, and BOWNES, District Judge.*

LEVIN H. CAMPBELL, Circuit Judge.

Respondent, Beth Israel Hospital, is a major non-profit hospital of national reputation in Boston, Massachusetts. In 1975, the hospital had the following rule:

"Hospital employees who want to solicit other employees for the Union or other causes may do so when they are not on their own working times, but only in two well-defined locations of the Hospital: 1) Employee-only areas — employee locker rooms and certain adjacent rest rooms; and

2) Cafeteria and coffee shop.

In the locker areas literature may be offered. In the cafeteria and coffee shop, conversations may take place on a one-to-one basis but there is to be no setting up of special tables, public distribution of literature nor any form of coercion. Elsewhere within the Hospital, including patient-care and other work areas, the lobbies, corridors, elevators, libraries, meeting rooms, etc., there is to be no solicitation nor distribution of literature. Soliciting of patients and visitors is

* Of the District of New Hampshire, sitting by designation.

expressly prohibited at all times and places."

While this rule was in effect, an employee, Ann Schunior, distributed a union newsletter in the hospital cafeteria. She was given a verbal warning by a superior and subsequently notified in writing that she would be fired if she persisted in such activities. Charges were thereupon filed by the Massachusetts Hospital Workers' Union, Local 880, Service Employees International Union. The Regional Director of the N.L.R.B. issued a complaint that the promulgation of the hospital's rule against distribution of union literature in the cafeteria and coffee shop, and limiting solicitation there to a one-to-one basis, violated § 8(a)(3) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(3) and (1). The hospital's warnings to Ms. Schunior were alleged also to violate § 8(a)(3) and (1). While the complaint was pending, the hospital promulgated a new rule flatly banning solicitation and distribution by employees in the cafeteria and coffee shop and other areas open to the public.[1]

After a hearing on the complaint, the Administrative Law Judge ruled that "[b]y initiating, promulgating and maintaining a written rule prohibiting distribution of union literature, and union solicitation except on a 'one-to-one' basis, in its cafeteria and coffee shop, the Respondent violated Section 8(a)(1)." The ALJ's proposed remedial order required the hospital to rescind its written warning to employee Schunior and "[r]escind its written rule prohibiting distribution of union literature and union solicitation in its cafeteria and coffee shop." The ALJ also proposed a broad order prohibiting discrimination against or discipline of employees "for engaging in concerted

union activities for their mutual aid or protection, or in any like or related manner, interfering with, restraining, or coercing employees in the exercise of their rights guaranteed in Section 7."

In a brief memorandum decision, 223 N.L.R.B. No. 188 (1976), a three member panel of the Board affirmed the ALJ's "rulings, findings and conclusions". The Board went on, in its formal order, to adopt the substance of the ALJ's recommended order including that portion requiring the hospital to "[r]escind its written rule prohibiting distribution of union literature and union solicitation in its cafeteria and coffee shop." The Board, however, also appended the following footnote 2 to its decision:

"Subsequent to the Administrative Law Judge's Decision in this case, the Board in St. John's Hospital and School of Nursing, 222 N.L.R.B. No. 182 (1976), held that restrictions on solicitation and distribution in patient access areas such as cafeterias violates Sec. 8(a)(1) of the Act. Accordingly, the Respondent also violated Sec. 8(a)(1) by maintaining an overly broad no-solicitation, no-distribution rule that prohibited all solicitation and distribution in all areas to which patients and visitors have access and employees have access during nonworking time other than immediate patient care areas." Id., slip op. at 1 n. 2.

Resisting the Board's petition for enforcement, Beth Israel argues that curtailing solicitation and distribution in the cafeteria and coffee shop is justified by the special circumstances of a health-care institution. Some of its out-patients and in-patients visit the cafeteria and coffee shop during the day and will, it is contended, be upset by the "table-hopping" and some-

---

1. "There is to be no soliciting of the general public (patients, visitors) on Hospital property. Soliciting and the distribution of literature to BI employees may be done by other BI employees, when neither individual is on his or her working time, in employee-only areas—employee locker rooms and certain adjacent rest rooms. Elsewhere within the Hospital, including patient-care and all other work areas, and areas open to the public such as the lobbies, cafeteria and coffee shop, corridors, elevators, gift shop,

etc., there is to be no solicitation nor distribution of literature.

"Solicitation or distribution of literature on Hospital property by *non-employees* is expressly prohibited at all times.

"Consistent with long-standing practices, the annual appeal campaigns of the United Fund and of the Combined Jewish Philanthropies for voluntary charitable gifts will continue to be carried out by the Hospital."

times heated discussions which accompany union solicitation and distribution. The hospital also points out that some of the union literature distributed in the past has been harshly critical of the quality of health care which the hospital provides. Beth Israel suggests that its legitimate desire to prevent such literature from falling into the hands of patients and visitors, and thereby upsetting them, justifies its no-distribution rule.

Beth Israel also challenges the Board's footnoted conclusion that the hospital violated Section 8(a)(1) by maintaining an overly broad rule prohibiting all solicitation and distribution in all areas to which patients and visitors have access "other than immediate patient care areas". The hospital fears that this footnote will be read as expanding the scope of the Board's decision and order so as to mandate the allowance of organizational activity throughout the hospital in all except the most obvious patient care areas. The hospital maintains that such a reading would result in extreme unfairness to it, by cutting off all future opportunity to show the harmful effects upon patients of organizational activity in other parts of the hospital. The complaint made no reference to areas other than the cafeteria and coffee shop and no evidence as to the effects of union activity in other areas was introduced at the hearing.

■ Principles governing an employer's limitation of solicitation and distribution by employee union organizers are by now fairly well settled. Rules which prohibit union solicitation on the employer's property during nonworking time in any location have

been held to be presumptively unreasonable and discriminatory in the absence of evidence of special circumstances to justify them. *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 804, 65 S.Ct. 982, 89 L.Ed. 1372 (1945); *D'Youville Manor v. NLRB*, 526 F.2d 3, 5 (1st Cir. 1975); *St. John's Hospital & School of Nursing*, 222 N.L.R.B. No. 182, slip op. at 2, *appeal docketed*, No. 76–1130 (10th Cir. 1976). Rules prohibiting distribution of literature are likewise said to be presumptively invalid if applied during non-working time in non-working areas. *Food Store Employees Local 347 v. NLRB*, 135 U.S.App.D.C. 341, 418 F.2d 1177, 1180 (1969); *IAM District 9 v. NLRB*, 415 F.2d 113, 115 n. 5 (8th Cir. 1969); *NLRB v. Orleans Manufacturing Co.*, 412 F.2d 94, 96 (2d Cir. 1969); *Winchester Spinning Corp. v. NLRB*, 402 F.2d 299, 303 (5th Cir. 1968); *St. John's Hospital, supra*. In this case, the application of the employer's no-solicitation, no-distribution rules to the cafeteria and coffee shop banned concerted activities in non-working areas during non-working time. The burden, therefore, was on the hospital to show that special circumstances justified its curtailment of protected activities in these two places.

■ We are unable to say, on this record, that the Board was compelled to hold that Beth Israel met this burden. The Board views a hospital's "basic function" as the provision of patient care: it has accordingly declined to accept rules cutting back on organizational rights in non-patient care areas unless the hospital shows that the curtailed activity will impinge upon patient care.[2] The hospital argues that solicitation

---

**2.** The Board in *St. John's Hospital & School of Nursing*, 222 N.L.R.B. No. 182, slip op. at 4 n. 3, *appeal docketed*, No. 76–1130 (10th Cir. 1976), indicated that it would focus only on the employer's "basic function" in assessing the validity of the proffered justification for curtailing employees' concerted activities. Since a hospital's patient care function is believed not to be impaired by organizational activities in cafeterias and like areas, the Board refused to apply to hospitals its precedents upholding no-solicitation rules when applied to non-working-time activities of employees in department store sales floors and lunchrooms. *E. g., Goldblatt*

*Bros., Inc.*, 77 N.L.R.B. 1262, 1263–64 (1948); *May Dept. Stores Co.*, 59 N.L.R.B. 976, 981 (1944), *enforced*, 154 F.2d 533 (8th Cir.), *cert. denied*, 329 U.S. 725, 67 S.Ct. 72, 91 L.Ed. 627 (1946). While reasonable minds might differ as to the validity of such a distinction, we cannot say that the Board acted irrationally in viewing hospital cafeterias differently, given the different factors affecting the different sorts of institutions, their employees, and their clientele. We owe deference to the Board's application of the Act to the varying circumstances of employer-employee relations. *See NLRB v. Pipefitters Local 638*, 429 U.S. 507,

and distribution activities among employees might "offend or upset patients and their visitors" gathered in the cafeteria and coffee shop, but the Board could conclude that such activities in these public areas would not constitute a sufficient threat to the treatment of patients, or to their recovery, to justify depriving employees of their organization rights. There was evidence of very substantial employee use of such areas, and the Board had to weigh the probable effect on ambulatory patients and visitors of employee solicitation and distribution activities in these natural gathering areas against the harm to employees of a ban. Beth Israel asserts that patients witnessing "table-hopping" and heated pro- and anti-union discussions will be subject to anxiety as they worry about "the security of their environment." But this assumes that irresponsible behavior will be the norm, and gives no weight to the fact that only ambulatory patients visit the cafeteria and coffee shop. We think the Board was entitled to reject this line of argument as unduly speculative.[3] This is not to say that the Board does not bear a heavy continuing responsibility to review its policies concerning organizational activities in various parts of hospitals. Hospitals carry on a public function of the utmost seriousness and importance. They give rise to unique considerations that do not apply in the industrial settings with which the Board is more familiar. The Board should stand ready to revise its rulings if future experience demonstrates that the well-being of patients is in fact jeopardized. *See St. John's Hospital, supra*, slip op. at 3–4 (ban valid in "patient care areas" where greater likelihood of upsetting ill patients can be shown).

Beth Israel argues that its no-distribution rule will prevent the union's "scurrilous" attacks on the hospital's health

care from falling into the hands of patients or visitors. There was no evidence, however, that literature, offensive or otherwise, was distributed to patients or visitors. Employee Schunior testified that she took care to distribute only to employees. If in the future employee organizers deliberately distribute "scurrilous" literature to patients or visitors, the hospital may well have cause to discipline such employees. *Cf. NLRB v. Local 1229, IBEW (Jefferson Standard Broadcasting Co.)*, 346 U.S. 464, 74 S.Ct. 172, 98 L.Ed. 195 (1953). In any event, the hospital cannot justify a rule prohibiting distribution to employees of all types of literature on the ground that some of the literature may be scurrilous. Such an argument might at most justify a rule directed at offensive literature. We conclude that the Board did not err in finding that the hospital had not justified its no-solicitation, no-distribution rule as it related to the cafeteria and coffee shop.

We have much more sympathy with Beth Israel's criticism of the Board's finding, appearing in footnote 2 of its decision, of a § 8(a)(1) violation founded upon the rule's applicability to all other non-patient-care areas. Footnote 2 can be read in several ways. Arguably, it merely cites *St. John's Hospital, supra*, as additional authority for finding invalid an "overly broad" rule which outlaws solicitation and distribution in areas "such as cafeterias." Such a reading of the footnote is consistent with the rest of the Board's decision and order which applies only to the particular areas focused on by the ALJ, i. e., the cafeteria and coffee shop. On the other hand, the footnote can also be interpreted as a binding determination that solicitation and distribution must be permitted, without limitation, in "all areas . . . other than immediate patient care areas." Such is the interpreta-

528, 97 S.Ct. 891, 51 L.Ed.2d 1 (1977); *NLRB v. Truck Drivers Local 449*, 353 U.S. 87, 96, 77 S.Ct. 643, 1 L.Ed.2d 676 (1957).

3. The Board's conclusion that the hospital had not carried its burden of showing special circumstances receives further support from the ALJ's supported finding that numerous non-union distribution activities have been routinely

permitted in the cafeteria and coffee shop. *William L. Bonnell Co. v. NLRB*, 405 F.2d 593, 595 (5th Cir. 1969); *NLRB v. Electro Plastic Fabrics, Inc.*, 381 F.2d 374, 376 (4th Cir. 1967). *See Schwarzenbach-Huber Co. v. NLRB*, 408 F.2d 236, 256 (2d Cir.), *cert. denied*, 396 U.S. 960, 90 S.Ct. 436, 24 L.Ed.2d 425 (1969).

tion urged on us by the Board's counsel in seeking enforcement of the order in this case.

■ Without any facts in the record pertaining to the appropriateness of solicitation and distribution restrictions in areas other than the cafeteria and coffee shop, or any indication that the Board was focusing on other areas, we are unwilling to give such a broad interpretation to its puzzling footnote.[4] Counsel's post hoc rationalizations cannot serve to fill a critical gap in the record. *NLRB v. Metropolitan Life Insurance Co.*, 380 U.S. 438, 443–44, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965). Moreover, the Board did not clarify or expand the ALJ's proposed order which, given the narrow focus of his decision, could not have been intended to apply outside the cafeteria and coffee shop. We are also constrained to give a narrow reading to the Board's decision and order in view of the fact that the Board has only recently been given jurisdiction over non-profit hospitals. The law affecting solicitation and distribution in these hospitals is still largely undeveloped and we think that it would be particularly inappropriate for the Board to be adjudicating pa-

tients', hospitals' and employees' rights in as cursory a fashion as would be indicated by giving a broad reading to footnote 2 in this case.

■ We thus make plain that we interpret the Board's decision and order as adjudicating no more than the status of the cafeteria and coffee shop. The order proposed by the ALJ and adopted by the Board required the hospital to "[r]escind its written rule prohibiting distribution of union literature and union solicitation in its cafetera and coffee shop." We think this fairly obviously was intended to regulate only the two mentioned areas. To avoid any question we shall enforce that order only as amended to read, "[r]escind *that part of* its written rule prohibiting distribution . . [etc.]".[5] In so doing we in no way suggest that union activity may properly be banned in other public areas. It may well turn out that a rule banning distribution and solicitation is likewise invalid in many other non-patient-care areas accessible to patients and visitors as well as employees. But we think that the hospital should not be foreclosed from demonstrating that special circumstances justify a different result elsewhere.[6] Since we refuse to enforce the

---

**4.** The Board argues that Beth Israel itself put in issue all non-patient-care areas and therefore should not be heard to argue that the Board improperly determined the rule's legality in all such areas. We understand Beth Israel at most to have argued that it, *qua* hospital, had the right to ban all solicitation and distribution on its premises. While this argument obviously goes too far, we do not see it as inviting the Board, in one fell swoop, to adjudicate the status of all other areas even though the record contained no information pertaining to these other areas. Nowhere other than in the ambiguous footnote does the Board indicate that it focused on the rule's application to particular non-patient-care areas beyond the cafeteria and coffee shop.

The Board also argues that if it improperly expanded the scope of its inquiry to invalidate the rule in all non-patient-care areas, Beth Israel waived its right to raise this issue on appeal by failing to petition the Board for reconsideration of its decision. *See* § 10(e), 29 U.S.C. § 160(e); *ILGWU v. Quality Mfg. Co.*, 420 U.S. 276, 281 n. 3, 95 S.Ct. 972, 43 L.Ed.2d 189 (1975). If the Board's footnoted addition to its decision were unambiguous, this procedural argument might have merit. However, we do not

believe the language of the footnote would have put the hospital on notice that the decision was to be read as adjudicating the status of all non-patient-care areas. One would scarcely expect the Board to use a footnote to make a binding ruling of this nature. This broad interpretation of the footnote apparently first came to Beth Israel's attention when an ALJ in another proceeding pronounced himself bound by the Board's footnote to hold that the no-solicitation, no-distribution rule was invalid in all public areas. Since footnote 2 did not give the hospital fair warning that its decision would be construed as an adjudication binding Beth Israel with respect to all non-patient-care areas in its hospital, we reject the Board's argument that § 10(e) prevents the hospital from arguing here that a narrow reading should be given to footnote 2.

**5.** The "notice to employees" ordered by the Board to be posted should also be reworded to reflect this clarification of the order.

**6.** We would add that a phrase like "immediate patient-care areas" is far from self-defining given the complexity of a major metropolitan hospital. Would a waiting area by the nurse's

order in areas other than the cafeteria and coffee shop, the hospital is not collaterally estopped from litigating the propriety of the rule in other areas. *See W. W. Windle Co. v. Commissioner*, 550 F.2d 43 at 46 (1st Cir. 1977) and the authority therein cited. *See also Martin v. Henley*, 452 F.2d 295, 300 (9th Cir. 1971); *International Refugee Organization v. Republic S. S. Corp.*, 189 F.2d 858, 862 (4th Cir. 1951).

 Finally, we decline to enforce paragraph 1 of the Board's order which broadly prohibits interference with "concerted union activities" and "the exercise of [employees'] rights guaranteed in Section 7 of the Act." [7] A non-profit hospital's concern about the possible effect on patients of organizational conduct in parts of the institution can hardly be dismissed as unreasonable when registered at a time when guidelines are still in flux and are in the process of being formulated through administrative and court proceedings. We do not think it can reasonably be inferred from a single violation of this character that the hospital has a proclivity knowingly to violate the Act, thus justifying a broad order. *See NLRB v. Curtis Manufacturing Co.*, 421 F.2d 1335, 1337 (5th Cir. 1970); *J. P. Stevens & Co. v. NLRB*, 417 F.2d 533, 539 n. 11 (5th Cir. 1969); *NLRB v. Ochoa Fertilizer Co.*, 283 F.2d 26, 30 (1st Cir. 1960) (citing cases), *rev'd on other grounds*, 368 U.S. 318, 400, 401, 82 S.Ct. 344, 7 L.Ed.2d 312 (1961). The Supreme Court has held that an isolated violation of the Act "does not justify an injunction broadly to obey the statute and thus subject the defendant to contempt proceedings if he shall at any time in the future commit some new violation unlike and unrelated to that with which he was originally charged." *NLRB v. Express Publishing Co.*, 312 U.S. 426, 436, 61 S.Ct. 693, 699, 85 L.Ed. 936 (1941). *See also General Motors Co. v. NLRB*, 512 F.2d 447, 448 (6th Cir. 1975); *NLRB v. Curtis Manufacturing Co., supra; NLRB v. Richards*, 265 F.2d 855, 861 (3d Cir. 1969). *See NLRB*

*v. Kingwood Mining Co.*, 404 F.2d 348 (4th Cir. 1968); *NLRB v. Scherer & Sons, Inc.*, 370 F.2d 12, 13 (5th Cir.), *cert. denied*, 389 U.S. 836, 88 S.Ct. 46, 19 L.Ed.2d 97 (1967).

Except as indicated above, the Board's order will be enforced.

*So ordered.*

---

desk on a floor where patients reside be a "patient-care area?" Would the waiting room in the emergency ward?

**7.** The Board made the order even broader than the ALJ proposed by substituting "in any other manner" for "in any like or related manner".