

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-4-1995

# Painewebber v Faragalli

Precedential or Non-Precedential:

Docket 94-1896

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Painewebber v Faragalli" (1995). *1995 Decisions.* Paper 206.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/206

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

----------

No. 94-1896

----------

PAINEWEBBER INCORPORATED;
SHELDON CHAIKEN; LEE H. LOVEJOY;
ANTHONY PRESOGNA; KEVIN COLLINS

v.

HENRY J. FARAGALLI, JR.,

Appellant

----------

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 94-mc-00147)

----------

Argued Tuesday, June 27, 1995

BEFORE:  HUTCHINSON, ROTH and GARTH, Circuit Judges

----------

(Opinion filed  August 4, l995)

----------

Thomas T. Loder (Argued)
Christopher P. Stief
Rubin & Associates
10 South Leopard Road
Suite 202
Paoli, Pennsylvania 19301

Attorneys for Appellant


John M. Linsenmeyer (Argued)
Morgan, Lewis & Bockius
101 Park Avenue

2

New York, New York 10178

Elizabeth H. Fay
Morgan, Lewis & Bockius
2000 One Logan Square
Philadelphia, Pennsylvania 19103
Attorneys for Appellees

----------

OPINION OF THE COURT

----------

GARTH, Circuit Judge:

Henry J. Faragalli, Jr. ("Faragalli") appeals from an order of the distri

court which granted the petition of appellees PaineWebber Incorporated, Sheldon Cha

Lee H. Lovejoy, Anthony Presogna and Kevin Collins (collectively, "PaineWebber") to

arbitration. The principal questions on appeal are two: first, whether PaineWebber

cause of action to compel arbitration under § 4 the Federal Arbitration Act accrued

Faragalli filed a "Writ of Summons" in the Pennsylvania Court of Common Pleas in 19

was thus time-barred when PaineWebber filed its 1994 petition? Second, whether

PaineWebber waived its right to compel arbitration by engaging in protracted settle

negotiations with Faragalli and by moving to have Faragalli's state court action di

for non pros? The district court ruled against Faragalli on both issues and grante

PaineWebber's petition to compel. We affirm.

I.

In 1981, Faragalli, a stockbroker and registered representative of what w

Paine, Webber, Jackson & Curtis, signed a "Uniform Application for Securities and

Commodities Industry Representative and/or Agent," thereby committing himself to ak

the rules of the New York Stock Exchange ("NYSE"). NYSE Rule 347 provides as follow

> Any controversy between a registered representative and any member or
> member organization arising out of the employment or termination of
> employment by such registered representative by and with such member
> or member organization shall be settled by arbitration....

4

App. 758a.

PaineWebber terminated Faragalli's employment sometime in December of 198[...]

or about November 16, 1988, Faragalli filed a Writ of Summons in the Philadelphia C[...]

Common Pleas.  The Writ of Summons named PaineWebber[1] and stated that "[y]ou are no[...]

that the Plaintiff, Henry J. Faragalli, Jr., has commenced an action against you."  [...]

14a.  The Writ gave no information regarding the nature of Faragalli's claims.  Und[...]

Pennsylvania law PaineWebber was under no obligation to respond to the Writ, and Fa[...]

was under no obligation to file an initial pleading unless requested to do so by

PaineWebber.  Pa. R. Civ. P. 1037.

Shortly after filing the Writ of Summons Faragalli sent PaineWebber's law[...]

unfiled "draft complaint" alleging state law causes of action for breach of contrac[...]

defamation, conversion, interference with contractual relations, invasion of privac[...]

unjust enrichment.  Settlement negotiations ensued, and, as far as we can tell from[...]

record, no complaint was filed by Faragalli in the next five years nor was any othe[...]

substantive action taken in state court during that time.  On November 23, 1993,

Faragalli's state court action was automatically dismissed for lack of activity und[...]

Pennsylvania's "day backward" docket clearing program.

On April 14, 1994, the Court of Common Pleas granted Faragalli's motion t[...]

his action reinstated but ordered Faragalli to file a complaint within 20 days.

On May 2, 1994, Faragalli filed a complaint claiming that PaineWebber ha[...]

withheld commissions and other compensation and had committed assorted torts in the[...]

process of informing Faragalli's clients that he was no longer employed by PaineWeb[...]

Three days later PaineWebber moved to have Faragalli's action dismissed for non pro[...]

This motion was denied without explanation by order of June 17, 1994.  App. 407.

---

[1]It appears from the state court docket that Faragalli failed to serve the writ on [...]
petitioners Chaiken and Collins.

5

On May 23, 1994, some six and one half years after Faragalli's discharge, and one half years after Faragalli filed the Writ of Summons and 21 days after Fara finally filed his complaint, PaineWebber entered a preliminary objection in state c the ground that the claims stated in Faragalli's complaint were subject to arbitrat In his June 10, 1994 reply to PaineWebber's objection Faragalli expressly denied fo first time that his claims were subject to arbitration. App. 433.

No discovery or briefing on the merits ever occurred in state court.

Within two months after asserting in state court that Faragalli's claims be arbitrated, on July 15, 1994, PaineWebber filed a petition in the Eastern Distri Pennsylvania to compel arbitration. Faragalli objected based on timeliness and wai By memorandum and order dated August 15, 1994, the district court ruled that PaineW petition was timely. The court reasoned that "the mere filing of the writ of summo without the filing of a complaint, was insufficient as a matter of law to constitut rejection of arbitration." Dist. Ct. Op. at 5. The court also concluded that Pain had not waived its right to arbitrate; held that all of Faragalli's claims were wit scope of the arbitration clause; directed the Court of Common Pleas to stay Faragal state court action; and entered an order compelling arbitration.

## II.

Faragalli's first argument is that the applicable four-year statute of limitations on PaineWebber's action to compel arbitration began to run the week of November 16, 1988, when Faragalli filed the Writ of Summons and delivered a draft complaint to PaineWebber. Because PaineWebber did not petition the court to compel arbitration until July 15, 1994, some five and a half years later, Faragalli mainta that PaineWebber has been barred by the statute for roughly a year and a half. Pain argues that the statute was triggered no earlier than May 2, 1994, when Faragalli a filed his complaint in state court.

The relevant facts are not in dispute, and our review over this issue is plenary. See Adams v. Trustees of the New Jersey Brewery Employees' Pension Trust 29 F.3d 863, 869 (3d Cir. 1994); Sheet Metal Workers, Local 19 v. 2300 Group, Inc., F.2d 1274, 1278 (3d Cir. 1991). As our discussion will reveal, we hold that an act compel arbitration under the Federal Arbitration Act accrues only when the responde unequivocally refuses to arbitrate, either by failing to comply with an arbitration or by otherwise unambiguously manifesting an intention not to arbitrate the subject of the dispute.

The district court held that the mere filing of the writ of summons, with filing of a complaint, was insufficient as a matter of law to constitute a rejectio arbitration. Dist. Ct. Op. 5. We agree. Filing a Pennsylvania Writ of Summons ca constitute an unequivocal refusal to arbitrate because the Writ is silent as to the subject matter of the dispute. Nor does providing an adversary with a draft compla which has not been filed in court constitute an unequivocal refusal to arbitrate be it does not rule out a willingness to arbitrate. Moreover, even if we were to cons the two documents together, that combination cannot manifest a refusal to arbitrate

Our review of the record discloses that the only events which could have constituted a rejection of arbitration occurred either on May 2, 1994, when Faragal filed his complaint in state court, or on June 10, 1994, when Faragalli for the fir expressly denied that his claims were subject to arbitration. In either event, as discuss infra, PaineWebber was not barred by the Statute of Limitations.

III.

Section 4 of the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (the "FAA provides as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of
> another to arbitrate under a written agreement for arbitration may

7

> petition any United States district court . . . for an order directing
> that such arbitration proceed in the manner provided for in such
> agreement. . .. The court shall hear the parties, and upon being
> satisfied that the making of the agreement for arbitration or the
> failure to comply therewith is not in issue, the court shall make an
> order directing the parties to proceed to arbitration in accordance
> with the terms of the agreement. . .. If the making of the
> arbitration agreement or the failure, neglect, or refusal to perform
> the same be in issue, the court shall proceed summarily to the trial
> thereof. . ..

9 U.S.C. § 4 (1988).

Because Faragalli claims that PaineWebber's petition was untimely, we mus[t] decide which statute of limitations applies under the FAA, and the date on which th[e] statute started running.

The FAA is "something of an anomaly in the field of federal court jurisdi[ction]" Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 25 n.32 (1983), i[n that] it gives federal courts the authority to compel arbitration, but does not in itsel[f] independent federal question jurisdiction. Id. Thus, the district court must have [an] independent jurisdictional basis before it can entertain a petition to compel arbit[ration] under § 4. National Iranian Oil Co. v. Mapco Int'l, Inc., 983 F.2d 485, 493 (3d Ci[r.] 1992).

Here, jurisdiction is premised on diversity of citizenship. In diversity actions to compel arbitration, timeliness of the petition is determined by referenc[e to] the applicable state law statute of limitations. National Iranian, 983 F.2d at 492[.] The parties agree that Pennsylvania law applies to this case. Because this action [is] based on a contractual arbitration clause, Pennsylvania's four-year statute of limi[tations]

8

for contract actions applies.  42 Pa.C.S. § 5525 (1994).[2]  While a state statute of

limitations may be "borrowed" for a federal claim, federal, not state, law governs

when the cause of action accrues.  Keystone Ins. Co. v. Houghton, 863 F.2d 1125, 1

Cir. 1988).

Other courts have held that the right to petition for arbitration under §

arises after the adverse party has refused arbitration.  See, e.g. Reconstruction F

Corp. v. Harrisons & Crosfield, 204 F.2d 366, 369 (2d Cir.), cert. denied, 346 U.S.

(1953) ("The 'cause of action' for breach of the obligation to arbitrate did not 'a

until defendant recently asked Reconstruction Finance Corporation to arbitrate the

'controversy,' and Reconstruction Finance Corporation then refused to comply"); Har

Corp. v. Millard, 531 F.2d 585, 600 n.12 (D.C.Cir. 1976)  ("[S]tatute [of limitatio

could not begin to run until the [arbitration] agreement was broken, that is to say

arbitration was sought by one party and refused by the other").  See also Moses H.

Memorial Hospital, 460 U.S. at 21 ("[a]n indispensable element of Mercury's cause o

action under § 4 for an arbitration order is the Hospital's refusal to arbitrate").

Although we do not appear to have passed on the precise issue of when a c

action accrues under the FAA, we have held in the context of a petition to compel

arbitration under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a

such a cause of action "arises when [one of the parties] takes an unequivocal positi

that it will not arbitrate."  Federation of Westinghouse Independent Salaried Union

Westinghouse Elec. Corp., 736 F.2d 896, 902 (3d Cir. 1984).  Accord Local Joint Exe

Bd. of Las Vegas v. Exber, Inc., 994 F.2d 674, 676 (9th Cir. 1993) ("[T]o start the

statute of limitations running [under § 301(a)], an unequivocal, express rejection

union's request for arbitration must be communicated"); Aluminum Brick and Glass Wo

Int'l Union v. AAA Plumbing Pottery Corp., 991 F.2d 1545, 1548 (11th Cir. 1993) (th

---

[2] The parties do not rely on any contractual provisions setting a time limit for sub
a demand for arbitration.

9

period under § 301(a) "begins to run when one party unequivocally refuses to arbitr[ate the]
dispute").

We find this doctrine equally applicable to a petition to compel arbitrat[ion]
under the FAA, which provides relief only to those persons "aggrieved by the allege[d]
failure, neglect, or refusal of another to arbitrate."  9 U.S.C. § 4 (emphasis adde[d]).
Clearly, unless the respondent has resisted arbitration, the petitioner has not bee[n]
"aggrieved" by anything.  The reason for this rule, though little discussed, is ev[ident:]
unless and until an adverse party has refused to arbitrate a dispute putatively gov[erned]
by a contractual arbitration clause, no breach of contract has occurred, no dispute [as to]
whether to arbitrate has arisen, and no harm has befallen the petitioner -- hence, [the]
petitioner cannot claim to be "aggrieved" under the FAA.

Moreover, it is doubtful that a petition to compel arbitration filed befo[re an]
"adverse" party has refused arbitration would present an Article III court with a [valid,]
justiciable case or controversy in the first instance.  See, e.g. Valley Forge Chri[stian]
College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, [471]
(1982) ("The constitutional power of federal courts cannot be defined, and indeed h[as no]
substance, without reference to the necessity 'to adjudge the legal rights of litig[ants in]
actual controversies'") (quoting Liverpool, N. Y. & P. S. S. Co. v. Commissioners o[f]
Emigration, 113 U.S. 33, 39 (1885)).


IV.

It follows that an express refusal to arbitrate a dispute following a dem[and for]
arbitration would undeniably start the clock running.  However, Faragalli at no tim[e]
expressly rejected arbitration until June 10, 1994, when, in his response to PaineW[ebber's]
objection made in state court that Faragalli's claims had to be arbitrated, Faragal[li]


10

denied that his state court claims against PaineWebber were subject to arbitration.

least one court has suggested, however, that the commencement of litigation by one

to a claimed arbitrable dispute can give rise to a cause of action under the FAA, S

Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 725 F.2d 192, 195 (2d Cir.

and PaineWebber concedes that the statute of limitations may have started running c

2, 1994, when Faragalli finally filed his complaint in state court.

Faragalli however wishes to go a step further and would have us hold that

a Pennsylvania Writ of Summons constitutes an unequivocal refusal to arbitrate.  We

agree.  Two factors inform our decision in the present case. First, Faragalli parti

in protracted settlement discussions with PaineWebber for a number of years after h

the Writ, and it was not until after five years had passed that he finally filed a

complaint, and then only under court order. While Faragalli's failure to file a com

is not definitive evidence that he was open to arbitration, it more than supports a

conclusion that he had not foreclosed that possibility.

Second, and more importantly, as we have earlier noted, a Pennsylvania Wr

Summons is silent as to the claims asserted by a plaintiff.  It neither requires th

defendant to take any responsive action, nor does it indicate to the defendant the

matter of the dispute.  Indeed, Pennsylvania courts have emphasized that a Writ of

is not a "pleading."  Fox v. Thompson, 546 A.2d 1146, 1147 (Pa. Super. 1988).  Henc

defendant cannot file preliminary objections to the Writ, which is the Pennsylvania

procedure for asserting the defense of an agreement to arbitrate. See Pa. R. Civ. E

1028(a)(6); Fox, 546 A.2d at 1147; see also Keller v. LaBarre, 311 A.2d 683 (Pa. Su

1973).  And, a fortiori, because the defendant cannot know the gravamen of the plai

complaint, the defendant is forestalled from claiming that the parties have agreed

arbitrate the disputed matter.

---

[3]Faragalli no longer denies that his substantive claims are subject to arbitration.

11

Because the Writ of Summons here conveyed no information as to Faragalli'[s]

causes of action, PaineWebber could not know whether Faragalli's threatened lawsuit[s]

within the scope of the arbitration clause. Thus, the Writ could not provide evide[nce]

that Faragalli, by filing it, was refusing to arbitrate the present claims, which b[oth]

parties now agree are subject to mandatory arbitration. Hence, the Writ could not [and]

not convey Faragalli's intent to litigate in court the allegedly arbitrable claims, [much]

less constitute an unambiguous and unequivocal refusal to arbitrate.

While it might be argued that Faragalli's "draft complaint" suggested wha[t]

Faragalli had in mind when he filed the Writ, Faragalli's contention that the deliv[ery of]

a draft complaint is a clear refusal to arbitrate, ignores Faragalli's manifest pur[pose in]

providing the draft to PaineWebber. Faragalli quite obviously, by not filing the co[mplaint]

but by simply informing PaineWebber of it, sought to present PaineWebber with his p[otential]

claims against PaineWebber in an effort to begin settlement negotiations. Faragall[i's]

failure to file a complaint, his subsequent failure to press forward with his actio[n, and]

his decision to undertake prolonged settlement negotiations with PaineWebber, buttr[ess the]

district court's and our conclusion that Faragalli had not unequivocally refused to

arbitrate.

PaineWebber was entitled to wait until Faragalli made his intentions clea[r]

(either by filing a complaint or by clearly manifesting a refusal to arbitrate in s[ome]

other manner) before it moved to compel arbitration. Thus by Faragalli having fail[ed to]

reject arbitration unequivocally, PaineWebber had four years from the time its acti[on to]

compel arbitration accrued in 1994 in which to petition the district court. We the[refore]

affirm the district court on this ground.


V.


12

Faragalli next argues that PaineWebber waived its right to arbitration. Faragalli relies primarily on our decision in Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912 (3d Cir. 1992). We hold this argument to be without merit.

Consistent with the strong preference for arbitration in federal courts, "is not to be lightly inferred," Gavlik Const. Co. v. H.F. Campbell Co., 526 F.2d (3d Cir. 1975) (quoting Carcich v. Rederi A/B Nordie, 389 F.2d 692, 696 (2d Cir. 19 accord Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25, ar waiver will normally be found only "where the demand for arbitration came long afte suit commenced and when both parties had engaged in extensive discovery." Gavlik, 5 at 783.

"[P]rejudice is the touchstone for determining whether the right to arbit has been waived." Hoxworth, 980 F.2d at 925.[4] In Hoxworth we found prejudice where the 11 months prior to seeking arbitration, the petitioners engaged in extensive mc practice, opposed the respondents' motions to compel discovery and deposed all of t named plaintiffs. In Hoxworth, the petitioners sought arbitration only after obtai useful information through discovery and only after the respondents' own motion to discovery had been granted.

Here, we have already concluded that PaineWebber's cause of action to com arbitration did not arise with the filing of the Writ of Summons in 1988. At the v earliest, the right to compel arbitration arose on May 2, 1994, when Faragalli file complaint in state court. Within two months, and before any discovery or briefing

---

[4]Also relevant to the waiver inquiry is "the degree to which the party seeking to c arbitration has contested the merits of its opponent's claims; whether that party h informed its adversary of the intention to seek arbitration even if it has not yet motion to stay the district court proceedings; the extent of its non-merits motion practice; its assent to the district court's pretrial orders; and the extent to whi parties have engaged in discovery." Hoxworth, 980 F.2d at 926-27 (citations omitte "Merely answering on the merits, asserting a counterclaim (or cross-claim) or participating in discovery, without more, will not necessarily constitute a waiver. at 925 (quoting Gavlik, 526 F.2d at 783).

merits, PaineWebber submitted its petition to compel arbitration.[5]  Faragalli has n

shown nor demonstrated prejudice due to this two month "delay."  To the extent that

Faragalli relies on the five year interval between the filing of the Writ of Summon

the eventual litigation of the motion to compel arbitration in federal court, Farag

must accept equal responsibility, as he took no action during those five years to

prosecute his claims against PaineWebber and only engaged in the aforementioned set

discussions.

Faragalli also contends that he was prejudiced due to PaineWebber's May 5

motion in state court to have his action dismissed for non pros, claiming that Pain

"sat on their hands, apparently hoping to dispose of Faragalli's claims on the meri

the state court actions, with prejudice, through their non pros motions."  Appellan

Brief 40.  However, Faragalli does not indicate how PaineWebber gained any advantag

how Faragalli was harmed, by PaineWebber's actions.  Faragalli has not suggested th

was "strung along" by PaineWebber during settlement negotiations, nor does he argue

PaineWebber's non pros motion was frivolous.

We agree with the district court that Faragalli has shown no prejudice, a

hence no waiver.


VI.

In the memorandum accompanying its order granting PaineWebber's petition

compel arbitration, the district court observed as follows:

> Moreover, at the oral hearing on this matter, counsel were in
> agreement that following the delivery of the draft complaint to
> PaineWebber's counsel, for a long period of time, the parties engaged
> in negotiations to attempt to resolve the matter.  During the course
> of negotiations, the parties exchanged proposed settlement agreements.
> Some of the proposed settlement agreements included referrals to

---

[5]The state court docket sheet reveals that, prior to 1994, PaineWebber did not part
at all in the state court proceeding.

14

> arbitration, while others did not.  Under these circumstances, I find as a matter of fact that there was no rejection or refusal of arbitration communicated to PaineWebber that triggered the running of the statute of limitations.

Dist. Ct. Op. 5.

On appeal Faragalli argues that there is no evidence of record to supp[ort the] district court's conclusion that arbitration was one possibility considered by the [parties] during settlement negotiations.  While the record before us does not include any pr[ior] settlement agreements, we read the district court's opinion to the effect that coun[sel] made these representations at oral argument.  We need not resolve that issue, howev[er, nor] need we decide whether the district court's determination was erroneous.  We hold t[hat] even in the absence of evidence that the option of arbitration was discussed, the f[acts] found, and the conclusions reached, by the district court more than adequately supp[ort the] conclusion that Faragalli had neither unambiguously nor unequivocally refused to ar[bitrate] simply by filing a Writ of Summons and providing a draft complaint to PaineWebber.

## VII.

The order of the district court granting PaineWebber's petition to compel arbitration will be affirmed.

_____

15