George L. SIMS and James M. McGhee, Petitioners,

v.

NATIONAL TRANSPORTATION SAFETY BOARD, Respondent.

No. 80–1331.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Oct. 2, 1980.

Decided Oct. 26, 1981.

J. Scott Hamilton, Hamilton & Hill, P. C., Denver, Colo. (Stan M. Connally, Denver, Colo., with him on the brief), for petitioners.

Susan J. Herdina, Atty., Civ. Div., Dept. of Justice, Washington, D. C. (Alice Daniel, Asst. Atty. Gen. and Barbara J. Herwig, Atty., Civ. Div., Dept. of Justice, Washington, D. C., with her on the brief), for respondent.

Before SETH, DOYLE, and SEYMOUR, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This case pertains to alleged violations of regulations during a flight from Bozeman, Montana to Salt Lake City, Utah. The petitioners George L. Sims and James M. McGhee are Frontier Airlines pilots. Sims, on the flight here in question, was acting as the pilot in command, and McGhee was acting as second in command of the aircraft, a Boeing 737–200. They were charged with executing a pass less than 1,000 feet from the peak of Grand Teton Mountain on January 31, 1976. Flight 22 is a regularly scheduled passenger flight from Kalispell, Montana to Salt Lake City, Utah, with intermediate stops in Missoula and Bozeman, Montana. Sanctions were imposed against both respondents by their company and also by the National Transportation Safety Board. They seek review of the validity of the sanctions imposed by the Board.

This case has been before this court previously. The prior proceedings involved appeal by the pilots of a reversal and remand of a dismissal of charges by the Administrative Law Judge. The direction was that there was to be a full hearing. The proceedings had been aborted by the Administrative Law Judge, who had dismissed on the grounds of violation of due process. This court in that case ruled that the controversy was not ripe for determination. A complete hearing was held by the Administrative Law Judge following remand. A subsequent determination by the National Transportation Safety Board followed.

The problem revolves around the deviation by the pilots from the usual route from Bozeman to Salt Lake City. Frontier has regulations and specifications which require planes of the size of the one which was being flown on Flight 22 to fly under instrument flight rules, or IFR, at all en route times. Here, however, the pilot on Flight 22 requested permission from the Salt Lake air traffic controllers to amend his flight plan so as to go over Yellowstone and the Grand Tetons. The reason for the change was in order to give the passengers a scenic view, allegedly a policy of Frontier. In any event, the air traffic controller in Salt Lake gave clearance to take the requested heading and to fly the visual flight

rules, VFR, to 17,000 feet, then commence instrument flight rules, IFR, to flight level 31,000 feet. However, Flight 22 leveled off at 11,000 feet and stayed at that level on visual flight rules for 15 to 20 minutes. After passing over Yellowstone National Park the flight approached the Grand Teton. It made a banking turn near the mountain and then hit severe mountain wave turbulence. The turbulence caused food trays and articles to be tossed around in the cabin, and caused injury to two flight attendants and one passenger.

Based on the deviation from the specified route and incidental violations, the petitioners were charged with violating several sections of the Federal Aviation Regulations (FAR):

(a) Section 91.9, by operating the aircraft in a careless or reckless manner so as to endanger the lives and property of others. 14 C.F.R. 91.9.

(b) Section 121.555(a) and (b), by operating the aircraft in scheduled air transportation over a route not specified in Frontier Airlines' specifications, and other than in accord with limitations in such operations and specifications. 14 C.F.R. 121.555(a) and (b).

(c) Section 121.657(a) and (c), by operating an aircraft under IFR in a designated mountain area at an altitude less than 2,000 feet above the highest obstacle within the horizontal distance of five miles from the center of the intended course when such operation is not necessary for take-off or landing. 14 C.F.R. 121.657(a) and (c).

The particular charges are in accordance with the regulations which are cited. Undoubtedly the pilot and co-pilot were in good faith in deciding to take the scenic flight. At the same time, they did recognize that a hazard existed, because it was announced by the captain that the passengers could anticipate that there would be turbulence, but that the scenic view would be worth the turbulence which could be anticipated. The Salt Lake air traffic controllers were aware that Flight 22 had not climbed directly to its 31,000 foot flight level, but did not contact the plane. An ATC witness stated that it is common for pilots to take the scenic route over Yellowstone.

The Administrator suspended the pilots' airline transport certificates for 90 days in the case of Captain Sims, and 60 days in the case of McGhee. The two pilots appealed and after going through all the procedures, the sanctions were reduced to 40 and 20 days.

Upon the remand, the Administrative Law Judge had found violation of only two of the charged violations, and further commented that the violations were innocuous, and in furtherance of Frontier's avowed policy of providing passengers with as scenic a flight as possible. The Administrative Law Judge imposed no sanctions. One of the pilots had already been suspended *by his company* for ten days and the other had received a letter of reprimand which was put in his employment file. These company sanctions are, of course, collateral to the present proceedings.

All parties appealed to the Board and the Board found guilt of an additional violation for which it imposed the 40 and 20 day sanctions.

The contentions which are advanced on this present appeal are for the most part alleged trial errors. These are described as follows:

1. That the National Transportation Safety Board erred in foreclosing petitioners from exercising pretrial discovery.

2. That the National Transportation Safety Board erroneously overruled the Administrative Law Judge's ruling that the witness Hill, an air traffic controller, could testify on behalf of the petitioners.

3. That the National Transportation Safety Board improperly reversed the Administrative Law Judge's dismissal of the proceedings.

4. That the Board erred in denying the pilots' appeal of the second initial de-

cision in the order of the Administrative Law Judge, when the Judge found a violation therein which was not supported by his findings of fact.

5. That the Board erred in granting the Administrator's appeal to the second initial decision and order of the Administrative Law Judge, and in so doing invaded the exclusive province of the trier of the facts.

6. That the Board erred in imposing sanctions which were not justified by the facts.

The court will treat most of the matters which are advanced in the brief in the order in which they are set forth. However, some of the points will not be addressed.

## I.

*Did the National Transportation Safety Board Erroneously Prevent Petitioners from Obtaining Pretrial Discovery?*

This is said to be a violation of the Constitution, as well as the Regulations.

■ The question as to whether there was an error on the part of the Board in denying discovery is treated by petitioners by citation of authorities that are general in character. They do not point out the evidence that was sought, the importance of it or the prejudice that was suffered as a result of the denial of the request. Nor do they discuss the fact that the request for discovery was made immediately after the case was set for trial. They had ample time to obtain discovery; there was plenty of opportunity, for a long period prior to the trial, to demand the discovery. Moreover, there is not the slightest effort to show that they were prejudiced by the failure to provide the discovery. Also, the discovery was requested, from what we have seen, in the broadest of terms. They were actually demanding that the Board make a search that was properly theirs to make. We can see no violation either of the Constitution or an abuse of discretion in denying the discovery. The hearing was a lengthy one and the facts were considered in great detail.

It is important to call attention to the fact that the petitioners were seeking a continuance simultaneously with their request for discovery. Their request for a continuance was based on the fact that they needed pretrial discovery. At the same time, there was no allegation that the F.A.A. or any other party would be unable to comply with the depositions or interrogatories which the pilots sought. It also appears that the F.A.A. had notified Sims and McGhee as far back as November of the previous year that it was prepared for the hearing, but no discovery requests were made by petitioners until February 23rd. There were other motions filed between that time and the time that the trial commenced. The F.A.A. had subpoenaed ten persons and had arranged for their attendance at the hearing. A continuance would have inconvenienced these people.

Professor Kenneth Culp Davis, in the 1978 Supplement to his Administrative Law Treatise, 1st Edition, clarifies this present question very considerably. Professor Davis calls attention to the Seventh Circuit's decision in *Silverman v. Commodity Futures Trading Commission*, 549 F.2d 28, 33 (7th Cir. 1977), which states, "There is no basic constitutional right to pretrial discovery in administrative proceedings," the APA does not provide for discovery, and the Federal Rules of Civil Procedure do not apply to an agency. *Silverman* upheld an order despite the denial of discovery. Professor Davis says that the *Silverman* holding clearly embodies the general law.

In the discussion which follows Professor Davis shows that the First Circuit agreed with the Sixth in allowing the N.L.R.B. to do as it pleased about allowing or not allowing discovery. *D'Youville Manor, Inc. v. N.L.R.B.*, 526 F.2d 3 (1st Cir. 1975).

But, in § 8.15 in the 1976 Supplement, the cases cited show that the Fourth and Fifth Circuits have expressed the view that judicially reversible unfairness may result from a denial of discovery. The author added, "The Second Circuit may be moving toward that view, for it is declared that if a party is 'clearly prejudiced' by denial of informa-

tion, 'the general counsel will have abused his discretion if he does not grant discovery.'" *N.L.R.B. v. Martin A. Gleason, Inc.*, 534 F.2d 466, 481 (2nd Cir. 1976). Finally, the author states that:

Although the Administrative Conference in Recommendation 70–4 recommended "minimum standards for discovery in adjudicatory proceedings," nearly all agencies have declined to publish such standards. Published rules of agencies that adjudicate more than 95 percent of cases through use of administrative law judges have been examined, and rules of only four agencies have been found which authorize discovery for agency records. Excerpts from four such rules are set out below, along with one rule which forbids inspection of agency records except under the Freedom of Information Act.

In the instant case there was good reason for denying discovery because of the delay in seeking it. Also, the request was extremely vague. It was in a form which required the agency to make decisions as to what information would help the accused and then to provide it. Effective discovery requires preliminary inquiry in order to find out what is there. Thus, the discovery should be pinpointed. And so, therefore, the requests were in part inadequate, and secondly, they were late, and thirdly, there was no showing of prejudice as a result of not getting the discovery. And finally, from all accounts, the head of National Transportation Safety Board is not shown to have issued a regulation providing for the observance of the Rules of Civil Procedure or any other provisions which would indicate adoption of rules with respect to discovery.

## II.

*Did the National Transportation Safety Board Err in Overruling the Administrative Law Judge's Direction That the Witness Hill, the Traffic Control Employee, Could Not Testify?*

■ The matter is subject to government regulation 49 C.F.R. § 9.5, which provides in pertinent part as follows:

*Testimony by employees in proceedings not involving the United States.*

(a) Except as provided in paragraph (c) of this section, an employee of the department may not testify as an expert or opinion witness for any party other than the United States in any legal proceeding in which the United States is involved, but may testify as to facts.

It is very plain that in a controversy with the government it is not permissible to call a government employee as an expert or opinion witness. The person can be called to testify to facts but not opinion. It should be noted that the request was to put Hill on the stand as an expert witness, and not to testify to facts.

Moreover, although the respondents had given notice of the fact that they were going to call an expert witness and that he would be an employee of the government, it was not until the day of the trial that it was brought home to the government, that is, to the respondents, that Hill was to be a witness. The government would not consent to it, as permitted by the express terms of the regulation that is quoted above. The agency could have consented to his testifying, and it might have been a better part of wisdom for the agency to ascertain the subject matter of his testimony; perhaps it would have proved harmless. However, the respondent Safety Board did not so proceed. They simply refused to allow him to testify and threatened him with sanctions if he did. It is not apparent that any prejudice was suffered from this, in any event, because a retired air controller was called as an expert and was examined regarding the subject matter which the petitioners wished to obtain from Hill.

In any event, although the Law Judge excluded Hill as a witness, he later relented and decided that he would permit him to be called the next day. On the following day, March 1, 1977, he gave his reasons for changing his mind, and said that the passage of the Independent Safety Board Act of 1974, 49 U.S.C. §§ 1901, 1907, had taken

the Board out from under the Department of Transportation. The Law Judge further relied on § 9.13 of the Department of Transportation Regulations, 49 C.F.R. § 9.13, and concluded that he would order the witness to testify and that the witness would have to comply with such an order. Apparently the F.A.A. pointed out that § 9.13 related to legal proceedings between private litigants and was inapplicable to the instant case. The F.A.A. further pointed out to the employee, who was in the courtroom at the time, that he was not allowed to testify and that in accordance with regulations he should refuse to answer questions put to him. The Law Judge then ordered Hill to take the stand. He was sworn but refused to answer any questions concerning the matter. He was ordered to answer them and he refused. It was then that the petitioners asked the F.A.A. to deviate from § 9.5 and to give permission to Hill to testify, pursuant to the Regulations, 49 C.F.R. § 9.1, which permits the witness to testify when (1) it is necessary to prevent a miscarriage of justice; (2) the department has an interest in the decision which may be rendered, and (3) the deviation is in the best interests of transportation activities fostered by the department. It would appear that this request was later denied.

Based on the Board's refusal, Sims and McGhee moved to dismiss the proceeding and the Law Judge granted the motion. The Board found that Sims' and McGhee's due process rights would not be violated by the exclusion of their expert witness, because his proposed testimony could be adduced from sources other than a person who was employed by the F.A.A.

As a result of the above ruling, petitioners contend that the decision of the F.A.A. in refusing to allow the testimony was erroneous. Judging from the extensive procedures that were followed and the earnest efforts made to obtain the man's testimony, the F.A.A. might have taken the position that as a matter of policy the witness could testify. We cannot say that it constituted error for them to refuse to accede to the demands of the petitioners.

The pilots rely on *N.L.R.B. v. Capitol Fish Company*, 294 F.2d 868 (5th Cir. 1961), wherein the court found that the exclusion of the Board investigating attorney as a witness because of the agency's internal rule violated fundamental fairness. That case is stronger than that which is before us. The petitioners also rely on this court's decision in *Sperandeo v. Milk Drivers and Dairy Employees*, 334 F.2d 381 (10th Cir. 1964). However, we have read the *Sperandeo* case and cannot see any parallel whatsoever in it. This was a situation in which the N.L.R.B. brought suit in the federal district court, and it was held that the trial court, not the litigant, was to determine whether documents claimed to be privileged were entitled to the privilege classification. The case is far different on its facts and also in its legal conclusion from the case that we here consider.

There is one further consideration and that is that the witness Hill was not the only witness who could provide the desired testimony here. The testimony was expert opinion evidence; thus, it was not as if the litigants were being deprived of factual information, and the fact that they were not prejudiced is shown by their being able to call as a witness the retired air controller. Presumably, he testified to the matters to which they wished to have the witness Hill testify. For the reasons stated we conclude that the refusal to consent to petitioners' request to call Mr. Hill did not constitute error. It follows, of course, that the question is not a matter of Constitutional dimension.

### III.

*Did the National Transportation Safety Board Improperly Reverse the Administrative Law Judge's Dismissal of the Proceedings?*

We hold that it did not. The entire argument of the petitioners on this point is that the Administrative Law Judge had the power to dismiss the proceedings upon the basis that there had been a refusal to allow the witness Hill to testify. We have already considered that matter, and if our

ruling is correct, it is a substantial answer to the present contention. They argue that the Administrative Law Judge had the authority to order the dismissal. The contention was that there was a violation of due process by depriving the petitioners of a witness. We are in disagreement with that premise. To be sure, it is part of due process to be able to call and present witnesses. But this due process was satisfied by allowing the petitioners to call another witness. They do not have a right under the due process clause to one particular witness unless that witness has information that is necessary to the petitioner. We have emphasized that this was not the problem. Since Hill was called as an expert witness, there was no necessity for the Board to consent to one of their employees being used in this manner. There are internal problems connected with it. This is not to say that the United States is not entitled to appeal the ruling of dismissal. It would give almost unlimited power to the Administrative Law Judge to refuse to allow appeal. Nor is there a showing that such a decree is a final unappealable ruling.

Neither the *N.L.R.B. v. Capitol Fish Company* case, *supra*, nor *Sperandeo v. Milk Driver's & Dairy Employees, supra*, are applicable to this fact situation. In *N.L.R.B. v. Capitol*, the problem revolved around the exclusion of the Board's investigating attorney as a witness. The investigating attorney was shown to have conducted a biased investigation in favor of the employee Benny Hill, who had been fired. He appealed to respective witnesses to give a statement upon the ground that it was to help Benny. Thus, the witness had tried to play on the feelings of sympathy which fellow employees would have in favor of the person fired. In one instance, it was shown that an effort was made to get an employee witness to sign a paper in blank; presumably it would have been filled out by the investigating attorney. And so, therefore, there was shown to have been actual fraud in the *N.L.R.B. v. Capitol Fish* case, and, of course, that is not present in the case at bar. In addition, under the N.L.R.A., there is now a provision under § 10 which re-

quires that the rules of evidence which obtain in federal district courts must be observed so far as practicable. That is not the situation in the case before us.

*Sperandeo*, the other case which is relied on, stems from the rule that the court, not the litigant, is to determine whether documents which are claimed to be privileged are entitled to the protection of the privilege. That, of course, is not a situation which we are considering and thus, it is not germane.

## IV.

*Did the Board Err in its Ruling on the Adequacy of the Evidence to Support the Specific Charges?*

■ Petitioners maintain that the Board erred in upholding a violation of § 121.-555(b), which pertains to compliance with approved routes and limitations. The charge was that there had been deviation. The Board determined that the evidence supports the violations of § 121.555(a) and (b), together with § 91.9, which section prohibits acting in a "careless and reckless manner."

Section 121.555 prohibits the operation of an aircraft in scheduled air transportation either (a) over a route not specified in the carrier's operations specifications, or (b) not in accordance with limitations in the operations specifications. The Board said in its opinion that the respondents did not dispute the violations of subsection (a), which is based on the fact that the flight operated over a route which was not specified in Frontier's operations specifications. With respect to subsection (b), the argument on appeal is that the Law Judge's finding that the crew failed to comply with the limitation mandating IFR operations for all large aircraft carriers is inconsistent with the Law Judge's finding that they were operating within their IFR clearance throughout the entire flight. The Board rejected this contention and reasoned that while the entire flight was conducted under an IFR flight plan or clearance, the portion below 17,000 feet was operated under VFR and

this is contrary to operations specifications. The Board thus concluded that the violations of subsections (a) and (b) of § 121.555 were established.

■ The contention of petitioners in their attack on the conclusion of the Board with respect to 49 C.F.R. § 91.9 concentrates on the action of the Board in overruling the Administrative Law Judge in order to find carelessness.

It is argued by the petitioners that the Board not only disregarded the narrow scope of review provided by its own rules and invaded the province of the trier of facts without having the benefit of those complex underlying factors which the Judge himself passed on to make crucial credibility choices, but it also destroyed the testimony in the record and ignored the realities of western geography. It sounds rather diabolic, but study indicates that it is not. In the first place, the Board did not re-examine the evidence and reach unjustified conclusions. The facts established the conclusion that the decision to fly dangerously near the Grand Teton was itself basically careless, and the Board was justified in so finding and concluding. Indeed, this was anticipated by the captains when they communicated to the passengers that they might encounter some turbulence. Perhaps the amount of turbulence was greater than had been anticipated by Captain Sims or Captain McGhee, whoever made the statement over the loud speaker. The important fact is that he was telling the passengers that they could expect an increase in the hazard or the risk of encountering turbulence. This exposure was wholly unnecessary to a successful flight. There was certainly no need to search out this scenic area which carried exposure to turbulence.

As to the charges under § 121.657, which prohibits this kind of aircraft from conducting a flight under VFR during the day at an altitude less than 1,000 feet above the surface or less than 1,000 feet from any mountain, hill or other obstruction to flight, the Board examined the evidence in some detail and concluded that while there was evidence of violations, both subsections (a)

and (b) of this provision, there was also evidence to the contrary given by the petitioners and witnesses on their behalf. The Board concluded that the Law Judge had made an unequivocal finding based on the evidence of petitioners and that of another witness.

Based on that analysis of the charges under § 121.657, deviation from the clearance which had been given by the flight controllers, the Board determined and concluded that the evidence was insufficient to establish this violation.

The charge pursuant to § 91.75(a), deviation from the clearance granted by the air controller, was also rejected by the Board.

■ Finally, the Board concluded that the Law Judge had erred in the action which he had taken with respect to sanctions. The Board said that the infractions did not, as the Law Judge had said, constitute innocuous violations, but rather the Board viewed them as serious and substantial departures from the performance to be reasonably expected of prudent airline pilots. The Board said that "although Frontier management encouraged pilots to point out scenic areas to passengers, we cannot accept that this policy extended to the type of flight conducted by respondents in this instance."

Finally, the Board did reduce the sanctions, holding that the appropriate disciplinary and deterrent sanctions would be a 40-day suspension as against Sims, with ten days credit given for the company sanction, and a 20-day suspension of respondent McGhee's certificate.

We are of the opinion that the actions thus taken by the Board were fair and reasonable and were fully supported by the evidence.

Accordingly, the judgment of the Board should be and the same is hereby affirmed.