2008 UT App 391

**PETRO–HUNT, LLC, Petitioner,**

v.

**DEPARTMENT OF WORKFORCE SERVICES, DIVISION OF ADJUDICATION, Workforce Appeals Board, and Bambi Elliot, Respondents.**

No. 20080002–CA.

Court of Appeals of Utah.

Oct. 30, 2008.

---

Rick D. Roskelley and Littler Mendelson, Las Vegas, Nevada, for Petitioner.

Geoffrey T. Landward, Salt Lake City, for Respondents.

Before Judges GREENWOOD, BENCH, and BILLINGS.

## OPINION

GREENWOOD, Presiding Judge:

¶ 1 Petitioner Petro–Hunt, LLC (Petro–Hunt) appeals the Workforce Appeals Board's (Appeals Board) conclusion that Bambi Elliot was a Petro–Hunt employee, not an independent contractor, and her wages are therefore subject to unemployment insurance taxes. We affirm.

## BACKGROUND

¶ 2 Elliot worked for Petro–Hunt, an oil and gas exploration company, from approximately September 2005 to January 2006. While working for Petro–Hunt, Elliot "generally performed work that fit within the duties of landmen." In the oil and gas industry, landmen typically assist companies with acquiring land and mineral leases, performing due diligence on those leases, and performing other lease-related assignments. Landmen can be company employees, conducting most of their work at the company site, or "contract landmen," performing most of their duties out in the field and at local courthouses. This case calls into question whether Elliot was a company landman or a contract landman.

¶ 3 Prior to working for Petro–Hunt, Elliot performed landman services for two other companies, Hingeline Land and Title (Hingeline) and Bowman and Associates (Bowman). Bowman had contracted to provide landman services for Petro–Hunt; however, in September 2005, Petro–Hunt canceled the Bowman contract. At approximately the same time, Petro–Hunt hired several of Bowman's employees, including Elliot. Elliot was specifically hired by Petro–Hunt to work on the Paradise Leases, an endeavor that was projected to last one year.[1] Under the terms of her contract with Petro–Hunt, Elliot received $200 per day in compensation, $15 per day as a per diem, and 44.5¢ per mile for all miles driven with her personal car. The contract categorized Elliot as a broker and independent contractor, and contained confidentiality

1.  Petro–Hunt refers to Elliot as a landman, while Elliot refers to herself as a land administrator. Because the Appeals Board focused on the substance of her work and not her title, this distinction is likely irrelevant. Nonetheless, Elliot testified that there is a distinction between the two because landmen go out into the field while land administrators work in an office.

and non-compete clauses. Petro–Hunt did not withhold any taxes for Elliot and provided her with 1099 independent contractor tax forms.

¶ 4 As part of her responsibilities for Petro–Hunt, Elliot was expected to perform due diligence on the Paradise Leases. She reviewed lease title documents and records, completed data entry, compiled reports and spreadsheets, filed documents, made copies, and answered phones and emails. She worked in the company's office in Ephraim, Utah, during regular business hours, working approximately forty to sixty hours a week. To complete her assignments, Elliot worked primarily from her own laptop computer, on which she "assimilated, consolidated, and organized the data and reports submitted by the field landmen." While she was with Petro–Hunt, Elliot did not advertise her services and she "did not indicate she wished to obtain any other clients because she was working full-time for Petro–Hunt."

¶ 5 At the close of the Paradise Leases project, in January 2007, Elliot was released from her employment with Petro–Hunt. She worked for Baseline, another oil and gas company, for approximately three months, then filed for unemployment compensation in April 2007. Robert Goodwin, a field auditor for the Utah Department of Workforce Services, investigated the status of Elliot's employment, and in the spring of 2007, concluded that Elliot "performed a personal service for Petro–Hunt," the service she provided constituted "covered employment," and, thus, Petro–Hunt was required to pay unemployment insurance taxes for the wages it had paid to Elliot.

¶ 6 Petro–Hunt appealed Goodwin's decision, and on September 6, 2007, an administrative law judge (ALJ) presided over a hearing on the matter. Two days prior to the hearing, Petro–Hunt filed a motion seeking a continuance and permission to conduct discovery "in the form of interrogatories, requests for the production of documents and a deposition of [Elliot]." The ALJ denied Petro–Hunt's motion and proceeded with the hearing.

¶ 7 After the September hearing, the ALJ issued findings of fact and conclusions of law, in which she determined that Elliot provided covered employment services for Petro–Hunt and, accordingly, the wages Petro–Hunt paid to Elliot were subject to unemployment insurance taxes. Petro–Hunt appealed the ALJ's decision to the Appeals Board. After additional briefing, the Appeals Board unanimously affirmed the ALJ's decision. Petro–Hunt appeals.

ISSUES AND STANDARDS OF REVIEW

■ ¶ 8 Petro–Hunt argues that by denying its motion for formal discovery and a continuance, the Appeals Board violated its right to due process "and [its] ability to prepare and conduct a defense." While Petro–Hunt categorizes this discovery issue as a constitutional question, the proper standard of review for the Appeals Board's discovery ruling is abuse of discretion. *See* Utah Code Ann. § 63G–4–403 (Supp.2008) (stating that appellate court shall grant relief if, among other reasons, "the agency action is … an abuse of the discretion delegated to the agency by statute"); *cf. Salt Lake Citizens Congress v. Mountain States Tel. & Tel. Co.*, 846 P.2d 1245, 1255 (Utah 1992) (holding that administrative agency "acted arbitrarily and capriciously in denying petitioners' request for discovery").

■ ¶ 9 Petro–Hunt also asserts that the Appeals Board erred by refusing to adopt Texas law that classifies landmen as independent contractors and by failing to properly apply "principles of Utah law" regarding independent contractor professions. And finally, Petro–Hunt challenges the Appeals Board's ultimate conclusion that Elliot was a Petro–Hunt employee as opposed to an independent contractor. "This court will reverse the Board's ultimate determination [on whether Elliot was an employee or an independent contractor], and upset its intermediate conclusions, only if we conclude they are irrational or unreasonable." *Tasters Ltd., v. Department of Employment Sec.*, 863 P.2d 12, 19 (Utah Ct.App.1993).

ANALYSIS

I. Due Process

¶ 10 Petro–Hunt argues that it was denied due process because the Appeals Board re-

fused to allow it the opportunity to conduct formal discovery. Its argument is based on the following two principles: First, that entities subject to an administrative hearing have "a due process right to receive a fair trial in front of a fair tribunal," and second, that "the modern rules of civil procedure were developed and subsequently adopted by each level of the judiciary from federal and state courts *to administrative agencies*." (Emphasis added.) As discussed below, neither of these two principles support Petro–Hunt's assertion of error.

¶ 11 While it is true that "every person who brings a claim ... at a hearing held before an administrative agency has a due process right to receive a fair trial in front of a fair tribunal," *Bunnell v. Industrial Comm'n*, 740 P.2d 1331, 1333 (Utah 1987), we cannot say that this fairness requirement necessarily includes a constitutional right to formal discovery in administrative proceedings. *Cf. Salt Lake Citizens Congress*, 846 P.2d at 1255 (holding that administrative agency "acted arbitrarily and capriciously in denying petitioners' request for discovery"). *But see Sims v. National Transp. Safety Bd.*, 662 F.2d 668, 671–72 (10th Cir.1981) (noting that some "[c]ircuits have expressed the view that judicially reversible unfairness may result from a denial of discovery"). "At a minimum," the procedural fairness mandate requires " '[t]imely and adequate notice and an opportunity to be heard in a meaningful way.' " *In re Worthen*, 926 P.2d 853, 876 (Utah 1996) (alteration in original) (quoting *Nelson v. Jacobsen*, 669 P.2d 1207, 1211 (Utah 1983)). And while due process requirements are " 'flexible and call[ ] for the procedural protections that the given situation demands,' " *id.* (quoting *Labrum v. Utah State Bd. of Pardons*, 870 P.2d 902, 911 (Utah 1993)), we see no constitutional right, either implied or explicit, to formal discovery in administrative proceedings. *Accord Beaver County v. Utah State Tax Comm'n*, 916 P.2d 344, 352 (Utah 1996) ("[D]iscovery in administrative proceedings is available only if governing statutes or agency rules so pro-

vide."); *Sims*, 662 F.2d at 671 (" 'There is no basic constitutional right to pretrial discovery in administrative proceedings.' " (quoting *Silverman v. Commodity Futures Trading Comm'n*, 549 F.2d 28, 33 (7th Cir.1977))); *State ex rel. Hoover v. Smith*, 198 W.Va. 507, 482 S.E.2d 124, 134 (1997) ("Generally, there is no constitutional right to pre-hearing discovery in administrative proceedings."); 2 Am.Jur.2d *Administrative Law* § 327 (1994) ("There is no constitutional right to pretrial discovery in administrative proceedings.").

¶ 12 Perhaps the flaw in Petro–Hunt's argument stems from its misconception that Utah's administrative agencies have formally adopted the Utah Rules of Civil Procedure.[2] This is, however, not the case. Instead, the Utah Administrative Procedures Act (UAPA) provides that in formal adjudicative proceedings, administrative agencies "may, by rule, prescribe means of discovery adequate to permit the parties to obtain all relevant information necessary to support their claims or defenses." Utah Code Ann. § 63G–4–205(1) (Supp.2008). And only if an agency chooses not to craft its own discovery rules do the Utah Rules of Civil Procedure apply. *See id.* ("If the agency does not enact rules under this section, the parties may conduct discovery according to the Utah Rules of Civil Procedure.").

¶ 13 In this instance, it is clear that the Department of Workforce Services has specifically adopted administrative rules that govern discovery procedures for unemployment insurance proceedings. *See* Utah Admin. Code R994–508–108. Rule R994–508–108 of the Utah Administrative Code states that formal discovery is only appropriate in limited circumstances:

(2) The use of formal discovery procedures in unemployment insurance appeals proceedings [is] rarely necessary and tend[s] to increase costs while delaying decisions. Formal discovery may be allowed for unemployment insurance hearings *only if so directed by the ALJ and*

---

**2.** We do not mean to imply that there is a constitutional right to discovery where administrative agencies have formally adopted the Utah Rules of Civil Procedure. We are merely acknowledging Petro–Hunt's misconception to clarify the origin of the right to discovery in administrative proceedings.

*when each of the following elements is present:*

(a) informal discovery is inadequate to obtain the information required;

(b) there is no other available alternative that would be less costly or less intimidating;

(c) it is not unduly burdensome;

(d) it is necessary for the parties to properly prepare for the hearing; and

(e) it does not cause unreasonable delays.

*Id.* R. R994–508–108(2) (emphasis added). Thus, in lieu of crafting an explicit right to formal discovery in unemployment insurance proceedings, the Department of Workforce Services has determined that the party requesting formal discovery has the burden to establish that certain factors have been met before its request will be granted, and the Appeals Board has the discretion to determine if the requesting party has met its burden. Based on this statutory scheme, we conclude that there is no constitutional right to formal discovery in unemployment insurance proceedings.

¶ 14 Further, as Petro–Hunt conceded at oral argument, it does not challenge this overall statutory scheme; rather, it only challenges the Appeals Board's ultimate conclusion on a constitutional basis. Although Petro–Hunt could have challenged the Appeals Board's denial of formal discovery as an abuse of discretion, it has not done so. *See generally* Utah Code Ann. § 63G–4–403(4)(h)(i) (stating relief may be obtained if the agency has abused its discretion). Nevertheless, in order to address the issue of fairness raised by Petro–Hunt, we note the following. In its request for formal discovery, Petro–Hunt cited the aforementioned rule and then provided a bald assertion that formal discovery was appropriate. More precisely, Petro–Hunt reiterated the factors that must be met for formal discovery to be allowed and then stated that "[e]ach of these factors is met here." Petro–Hunt, however, failed to provide any details of how each requirement was actually met. In spite of Petro–Hunt's terse argument, the Appeals Board made findings on each of the rule's requirements before concluding that formal

discovery was inappropriate. The Appeals Board specifically concluded that: (1) "[t]here is no evidence in the record establishing informal discovery was inadequate to obtain the information Petro–Hunt was seeking, or that [Elliot] was uncooperative with Petro–Hunt's informal requests, if there were any"; (2) "Petro–Hunt has not shown ... that there were no other available alternatives beyond interrogatories, requests for production, and [Elliot] traveling to Las Vegas to have her deposition taken"; (3) Petro–Hunt's requests were costly and intimidating, would have significantly delayed the hearing, and been unduly burdensome for Elliot, "especially ... considering that [Elliot] received Petro–Hunt's discovery requests" only a few days before the scheduled hearing; (4) Elliot had testified regarding all of the factors used to determine if she was an employee or an independent contractor and there was no evidence presented to indicate that she had lied; (5) although Petro–Hunt was requesting Elliot's tax returns, the ALJ had already requested the same, and Elliot testified that she could not find them, thus, formal requests for the returns were not likely to have produced a different result; and (6) Petro Hunt was provided "a full opportunity to see the evidence presented against it, to call and examine its own witnesses, and to cross-examine witnesses who testified against it."

¶ 15 In challenging the Appeals Board's denial of its request for formal discovery, Petro–Hunt identifies no evidence indicating that informal discovery procedures were inadequate, that there were no less costly or intimidating means available to gain access to the desired information, or that the requests would not have caused unreasonable delay. Instead, Petro–Hunt merely argues that it was prevented from presenting evidence that independent landmen "have been traditionally engaged by the oil and gas industry on an independent contract basis" and that Elliot "conducted and continues to conduct an independently established trade and occupation as a broker of oil, gas and mineral leases." Petro–Hunt also asserts that it was denied the opportunity to request Elliot's tax returns to establish that Elliot "was engaged as an independent contractor for other compa-

nies." However, even assuming that Petro–Hunt's assertions are true, Petro–Hunt is not alleviated from the obligation to establish that informal discovery procedures were inadequate to obtain the desired information. Because Petro–Hunt does not present any evidence indicating that it attempted to obtain this information through informal procedures, or that it met the additional requirements for formal discovery, we determine that there was no abuse of discretion in the Appeals Board's decision to deny Petro–Hunt's request for formal discovery. Moreover, we believe that Petro–Hunt was provided a fair hearing under the circumstances.

## II. Texas and Utah Law Regarding Landmen

¶ 16 Petro–Hunt next argues that the Appeals Board erred as a matter of law by refusing to adopt a Texas statute which generally defines landmen as independent contractors, and by refusing to recognize Utah precedent that automatically recognizes members of certain professions as independent contractors. As a basis for its Texas law argument, Petro–Hunt asserts that where Utah law is silent on a matter, i.e., contains no regulations regarding independent landmen, we should look to the law of sister states, such as Texas, as persuasive authority. This argument, however, is unpersuasive because even though Utah law does not address landmen specifically, it clearly requires tribunals to examine the facts of each case and analyze specific factors when determining whether an individual is an independent contractor or an employee for purposes of unemployment compensation.

¶ 17 More specifically, Utah Code section 35A–4–204 states that an individual performing services for wages under a contract of hire is considered an employee

> unless it is shown to the satisfaction of the division that:
>
> (a) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the contract of hire for services; and
>
> (b) the individual has been and will continue to be free from control or direction over the means of performance of those services, both under the individual's contract of hire and in fact.

Utah Code Ann. § 35A–4–204(3) (Supp.2008). Further, administrative rule R994–204–303 lists several factors that should be analyzed to determine if these two statutorily required circumstances exist. *See generally* Utah Admin. Code R994–204–303.

¶ 18 The administrative code goes on to explain that when making an employee/independent contractor determination, the facts of each case should be given "[s]pecial scrutiny" and "[t]he factors listed in … [the administrative code] are intended only as aids in the analysis of the facts of each case. The degree of importance of each factor varies depending on the service and the factual context in which it is performed." *Id.* Based on this statutory authority, we reject Petro–Hunt's notion that Utah statutory law mandates categorizing landmen as independent contractors in favor of recognizing that Utah law requires a specific inquiry into the facts present in each case when making an independent contractor determination. Thus, we further conclude that the Appeals Board acted rationally and reasonably in refusing to adopt a Texas statute which generally categorizes landmen as independent contractors.[3]

---

3. We also note that even if the Appeals Board were to adopt the Texas law to which Petro–Hunt refers, that law is not particularly helpful to Petro–Hunt's case. For example, the Texas statute states that individuals are to be classified as independent landmen, exempt from unemployment insurance taxes, where three conditions are met, one of which requires the individual to be "engaged primarily in negotiating for the acquisition or divestiture of mineral rights or negotiating business agreements that provide for the exploration for or development of minerals." Tex. Lab.Code Ann. § 201.077 (Vernon 1995). Under the facts presented in this case, there is no evidence in the record indicating that Elliot was engaged in the practice of negotiating for mineral rights or negotiating for the exploration or development of minerals. To the contrary, the evidence presented indicates that Elliot was involved in recording information related to mineral rights into her computer, compiling reports, answering phones, and sending and receiving emails.

¶ 19 For similar reasons, we also reject Petro–Hunt's argument that the Appeals Board erred by not adopting "long established Utah precedent" recognizing that individuals engaged in certain "independently established trades were *not* 'employees' of the companies they contracted with." First, the case to which Petro–Hunt refers fails to support the proposition that persons engaged in certain professions automatically qualify as independent contractors. In fact, in *North American Builders, Inc. v. Unemployment Compensation Division*, 22 Utah 2d 338, 453 P.2d 142 (1969), the Utah Supreme Court examined the specific facts of the case, including the administrative code factors discussed above, to determine whether the individual was an employee or an independent contractor. *See id.* at 143–45. The court made no generalizations about certain professions and we decline to adopt that practice here.

### III.  The Appeals Board's Independent Contractor Conclusion

¶ 20  Finally, Petro–Hunt challenges the Appeals Board's conclusion that Elliot was an employee because, as Petro–Hunt asserts, Elliot was customarily engaged in an independently established trade and Petro–Hunt "did not have the right of or exercise direction or control over Elliot's services." As previously stated, we will uphold the Appeals Board's decision that Elliot was an employee and not an independent contractor as long as we determine that the decision was reasonable and rational. *See Tasters Ltd. v. Department of Employment Sec.*, 863 P.2d 12, 19 (Utah Ct.App.1993). To determine if the Appeals Board's decision is reasonable and rational, we apply the substantial evidence test, which requires us to examine "all of the evidence supporting the Board's findings and [determine whether,] despite the supporting facts and all reasonable inferences that can be drawn therefrom, the findings are not supported by substantial evidence given the record as a whole." *Id.* Granting what the supreme court has referred to as "maximum deference," we will uphold the basic facts the Appeals Board relied on in reaching its ultimate conclusion "if there is evidence of any substance that can reasonably be regarded as supporting the determination made." *Allen & Assocs. v. Board of Review*, 732 P.2d 508, 508–09 (Utah 1987) (per curiam).

¶ 21  In examining the Appeals Board's conclusion, we begin with the proposition that Utah law presumes that individuals performing services for wages are employees "unless it is shown to the satisfaction of the division that: (a) the individual is customarily engaged in an independently established trade . . .; *and* (b) the individual has been and will continue to be free from control or direction." Utah Code Ann. § 35A–4–204(3)(a)–(b) (emphasis added). To assist a tribunal with making a determination on both of these requirements, the administrative code lists several factors that tribunals should consider. *See* Utah Admin. Code R994–204–303(1)(b). The rules make clear, however, that "[t]he factors . . . are intended only as aids in the analysis of the facts of each case." *See id.* R. R994–204–303.

¶ 22  In this case, the Appeals Board analyzed first whether Elliot was "customarily engaged in an independently established trade." Utah Code Ann. § 35A–4–204(3) (Supp.2008). After concluding that inquiry in the negative, the Appeals Board declined to examine whether Elliot was free from control or direction. The Appeals Board reasoned that because the statute's requirements for a finding of independent contractor status are conjunctive, a determination that the first requirement was not met negates the obligation to analyze the second requirement. On appeal, Petro–Hunt challenges the Appeals Board's ultimate conclusion that Elliot was an employee, not an independent contractor, as well as the Appeals Board's decision not to examine the second independent contractor requirement, i.e., whether Elliot was free from control or direction.

¶ 23  While Petro–Hunt takes issue with the Board's conclusion under each factor, it does not identify any disregarded evidence, but rather, "relies only upon its view of the evidence before the administrative tribunals." *Allen & Assocs.*, 732 P.2d at 508. Thus, we explore each factor the Appeals Board addressed to determine if the conclusion that

Elliot was a Petro–Hunt employee is, in fact, supported by the evidence to the extent that the Appeals Board's ultimate conclusion is reasonable and rational.

## A. The Factors

¶ 24 Under the first factor, "Separate Place of Business," Utah Admin. Code R994–204–303(1)(b)(i), the Appeals Board examined whether Elliot "has a place of business separate from that of the employer." *Id.* Based on the evidence presented, the Appeals Board ruled that the evidence weighed in favor of employment. In reaching this finding, the Appeals Board relied on Elliot's testimony in which she indicated that she performed all of her Petro–Hunt responsibilities in the company's office during normal business hours, she worked forty to sixty hours a week, and she did not maintain a separate place of business. Petro–Hunt argues that the Appeals Board should have concluded differently under this factor because the only evidence before it was Elliot's self-serving testimony and Petro–Hunt did not have an opportunity to discover if Elliot was lying. This argument, however, is unavailing because Petro–Hunt cross-examined Elliot and had an opportunity to present its own evidence on this issue. Without any evidence to indicate otherwise, we uphold the Appeals Board's conclusion that Elliot did not maintain a separate place of business.

¶ 25 Under the second factor, "Tools and Equipment," *id.* R. R994–204–303(1)(b)(ii), the Appeals Board declined to rule in favor of one party or the other. It concluded that the evidence was "neutral" because both parties had provided a similar amount of equipment, i.e., Elliot provided a laptop and software while Petro–Hunt provided items such as a copier, fax, and printer. Petro–Hunt disputes the Appeals Board's conclusion under this factor, asserting that computers and software are expensive and thus, the evidence under this factor "weighed heavily in favor of independent contractor status." We decline, however, to disturb the Appeals Board's determination, especially considering the fact that it is undisputed that both parties provided some office equipment.

¶ 26 The third factor, "Other Clients," *id.* R. R994–204–303(1)(b)(iii), addresses whether "[t]he worker regularly performs services of the same nature for other customers or clients and is not required to work exclusively for one employer." *Id.* Under this factor, the Appeals Board admittedly stated that "the facts on this issue are unclear," but ultimately determined that the evidence weighed in favor of employment. The Appeals Board relied on Elliot's testimony that she "did not have any other clients besides Petro–Hunt" as well as the fact that Elliot's contract contained a "non-compete clause, which she believed prevented her from performing similar services to any other client for a period of 12 months." The Appeals Board was also persuaded by Elliot's testimony indicating that her two previous employers issued her W–2 tax forms instead of 1099 forms.

¶ 27 Petro–Hunt attacks the Appeals Board's conclusion under this factor on the basis that "Elliot admitted to performing landman services for three other brokerage companies, including [Hingeline, Bowman, and Baseline]," and while working for Petro–Hunt, "Elliot was not required to work full time and was permitted to work as much or as little as she wished." However, neither of these two arguments are compelling because Elliot testified that she worked for Hingeline and Bowman prior to working for Petro–Hunt and afterwards, she worked for Baseline. The Appeals Board found Elliot's testimony was credible, and Petro–Hunt provides no contradictory evidence to cast doubt on her assertions. Moreover, regarding Elliot's hourly work requirements, the Appeals Board is required to base its determination on the circumstances as they existed at the time of employment, not on those that could have existed given the terms of the contract. *See McGuire v. Department of Employment Sec.,* 768 P.2d 985, 989 (Utah Ct.App.1989). The only evidence presented on this issue indicates that, regardless of the terms of her contract, Elliot worked between forty and sixty hours a week, during normal business hours, inside the company's Ephraim, Utah office. Again, Petro–Hunt fails to present any evidence to contradict Elliot's testimony. Because we conclude that the Appeals

Board's finding under this factor is supported by the evidence, we will not disturb its determination that this factor weighed in favor of employment.

¶ 28 The fourth factor calls into question whether "[t]he worker can realize a profit or risks a loss from expenses and debts incurred through an independently established business activity." Utah Admin. Code R994–204–303(1)(b)(iv). Here, the Appeals Board determined that "[Elliot] had very little overhead"; she worked in an office that Petro–Hunt had leased; she was reimbursed for travel; other than a computer, she was provided with all necessary office equipment; and all the money she received was pure profit with no accompanying risk of loss. Based on this evidence, the Appeals Board determined that the facts under this factor weighed in favor of employment. On appeal, Petro–Hunt tersely asserts that the Appeals Board "ignored evidence of how Ms. Elliot was paid and the underlying legal agreement between [the two parties]," which allowed Elliot to "have hired helpers, control[ ] her costs and take[ ] on additional work." However, even if Petro–Hunt's allegations were true, it fails to establish how these facts undermine the Appeals Board's conclusion that at the time Elliot was employed by Petro–Hunt, she had no risk of loss nor could she realize a profit.

¶ 29 Under the fifth factor, "Advertising," *id.* R. R994–204–303(1)(b)(v), Petro–Hunt asserts only that the Appeals Board "erroneously focused its attention on what Ms. Elliot chose not to do rather than on the legal rights she had in her business relationship with Petro–Hunt." Notwithstanding Elliot's potential right to advertise her services, "the appropriate inquiry" examines the facts as they existed at the time of employment, not what could have been. *See McGuire,* 768 P.2d at 988. Thus, we conclude that Petro–Hunt's argument under this factor is unavailing.

¶ 30 Because Petro–Hunt concedes that the sixth factor is inapplicable in this case, the only factor left to address is the seventh, which examines business records and tax forms. *See* Utah Admin. Code R994–204–303(1)(b)(vii). Here, the Appeals Board took

note of the fact that Petro–Hunt paid Elliot as an independent contractor, issuing her a 1099 tax form. It further noted that this factor "generally weighs in favor of independent contractor status, though it is not determinative by itself." Petro–Hunt argues that the Appeals Board's finding under this factor was wrong, and it should have been able to conduct discovery of Elliot's tax forms. However, given that Elliot admitted to filing a 1099 in relation to her employment with Petro–Hunt, and her testimony that she was unable to locate the forms in question, there is no indication that such discovery would have provided any benefit to Petro–Hunt, especially given the Appeals Board's determination that this factor weighed in favor of independent contractor status.

¶ 31 After examining each factor individually, the Appeals Board determined that "[a]t the time the services were rendered, [Elliot] was not engaged in an independently established trade or profession." Based on this conclusion, the Appeals Board declined to analyze the additional independent contractor requirement, that "the individual has been and will continue to be free from control or direction over the means of performance of those services, both under the individual's contract of hire and in fact." Utah Code Ann. § 35A–4–204(3)(b) (Supp. 2008). Petro–Hunt argues that this was reversible error. We, however, disagree. To establish that an individual is an independent contractor, Petro–Hunt must show both that Elliot was engaged in an independently established trade *and* that she was free from control or direction over her services. *See id.* § 35A–4–204(3)(a)–(b). Because the Appeals Board concluded that Petro–Hunt failed to establish that Elliot was engaged in an independently established trade, and we see no error in that conclusion, we agree with the Appeals Board that it was not required to analyze whether Elliot was free from control or direction.

## CONCLUSION

¶ 32 We conclude that the Appeals Board's discovery ruling does not present a constitutional question, but rather, a procedural

question, reviewed for abuse of discretion. Further, we see no error in the Appeals Board's conclusion that Petro–Hunt failed to establish that formal discovery procedures were necessary. We also conclude that the Appeals Board did not err in failing to adopt a Texas statute addressing independent landmen or Utah precedent categorizing certain types of workers as independent contractors. And finally, we affirm the Appeals Board's ultimate conclusion that Elliot was a Petro–Hunt employee, not an independent contractor, on the basis that the Appeals Board's decision is reasonable and rational.

¶ 33 I CONCUR: JUDITH M. BILLINGS, Judge.

¶ 34 I CONCUR EXCEPT AS TO SECTION I, IN WHICH I CONCUR ONLY IN THE RESULT: RUSSELL W. BENCH, Judge.