**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 7, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CHRIS HOGAN,

      Plaintiff - Appellant/
Cross-Appellee,

v.

UTAH TELECOMMUNICATION
OPEN INFRASTRUCTURE
AGENCY, a/k/a Utopia; TODD
MARRIOTT, Executive Director of
Utah Telecommunication Open
Infrastructure Agency,

      Defendants - Appellees/
Cross-Appellants.

Nos. 13-4069 & 13-4073
(D.C. No. 1:11-CV-00064-TS)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **O'BRIEN**, and **GORSUCH**, Circuit Judges.

---

Chris Hogan seeks damages from his former employer, the Utah

Telecommunication Open Infrastructure Agency (UTOPIA), a state agency that

works with municipalities to develop telecommunications infrastructure. The

trouble began when Mr. Hogan came to suspect his boss, Todd Marriott, had a

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

potential conflict of interest because Mr. Marriott's brother worked for a company that submitted a bid to perform work for UTOPIA. As it turned out, UTOPIA never accepted the bid. But while the bid was under consideration, Mr. Hogan resolved to do something. He spoke with Jarrod Pantier, the person in charge of the bidding process, and suggested to Mr. Pantier that he (Mr. Pantier) report Mr. Marriott's alleged conflict of interest to the Executive Board. As it happened, Mr. Pantier thought it better to tell Mr. Marriott about Mr. Hogan's allegations. According to the amended complaint, Mr. Marriott was furious and eventually forced Mr. Hogan out.

Mr. Hogan replied with this lawsuit alleging that his dismissal violated the First Amendment and various state laws. For its part, the district court dismissed all of Mr. Hogan's claims save those for breach of contract and breach of the covenant of good faith and fair dealing. At summary judgment, the court found for Mr. Hogan on these claims and awarded him $23,000. From these rulings, both sides now appeal. Mr. Hogan wants us to revive the claims the district court dismissed. UTOPIA wants us to overturn the district court's award on the contract/good faith claims. After careful consideration, however, we find the district court's analysis unimpeachable in all particulars but one.

*

We begin with Mr. Hogan's federal claim. Mr. Hogan argues that UTOPIA fired him in retaliation for speaking out about Mr. Marriott's possible conflict of

interest — and that UTOPIA's act of retaliation violated his First Amendment rights. The district court didn't see it the same way. Instead, the district court explained its view that the First Amendment does not protect public employees (or government contractors) from the consequences of speech they make pursuant to their official duties — and that Mr. Hogan's speech at issue in this case *was* made pursuant to his official duties. With all this we must agree.

The Supreme Court has indeed explained that the First Amendment does not protect public employees or contractors from the consequences of what they say in the course of their official duties. *See Garcetti v. Ceballos*, 547 U.S. 410, 421-22 (2006); *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 684 (1996). This court has also explained that it takes a rather "broad view of the meaning of speech that is pursuant to an employee's official duties." *Chavez-Rodriguez v. City of Santa Fe*, 596 F.3d 708, 713 (10th Cir. 2010) (internal quotation marks omitted). In this case, though, the question isn't even close. Mr. Hogan's complaints were clearly made within the scope of his official duties, just as the district court held.

By his own account, Mr. Hogan's official duties were extensive. He served as the Director of Operations, Vice President of Sales, Vice President of Marketing, and Vice President of Business Development for UTOPIA. According to his own amended complaint, this meant Mr. Hogan was responsible for

developing sales, marketing, and development functions for UTOPIA in the business and consumer markets, which included branding, marketing strategy and plan, hiring, training of employees, developing marketing, hiring partner agencies, conducting request for proposal processes to secure partners, liaising with all of UTOPIA's partners and stakeholders, meeting with city officials to attract new member cities to UTOPIA, making presentations about UTOPIA, meeting with strategic partners both inside and outside of UTOPIA, attracting and developing new service providers and application providers to the UTOPIA network, helping to develop the business model for the organization, and actively participating in board and executive committee meetings.

Am. Compl. ¶ 18. In short, by his own telling there was little at UTOPIA Mr. Hogan didn't have a hand in and responsibility over.

Neither is there any question that Mr. Hogan raised his concerns about Mr. Marriott's potential conflict of interest in furtherance of these duties. As Mr. Hogan's amended complaint concedes, he voiced his concerns to Mr. Pantier "to make sure the bidding process did not jeopardize the success of UTOPIA." *Id*. at ¶ 57. Simply put, Mr. Hogan was worried that UTOPIA would falter if an undisclosed conflict of interest were later unearthed and he thought disclosing it up-front would aid the organization's success: he made a complaint at work to another worker about an issue that affected their organization's success. All the usual hallmarks suggesting a statement made within the scope of official duties.

To this, Mr. Hogan replies by noting that he made his complaint to someone outside his direct chain of command. And, to be sure, Mr. Hogan made his complaint not to Mr. Marriott (his supervisor) but to Mr. Pantier. But then

-4-

again Mr. Hogan's complaint was *about* Mr. Marriott and he couldn't have expected his complaint to go over very well with Mr. Marriott. So Mr. Hogan suggested that Mr. Pantier present the complaint to the Executive Board. Taken together, these facts serve only to highlight that this is not a case in which the employee voiced his concern in the public square: Mr. Hogan discovered a risk to his organization and disclosed that risk internally pursuant to his official duties.

Neither do we see how we might reach any other result given the precedent that binds us. Like the deputy district attorney's complaint about an unsupported search warrant in *Garcetti* and the school district superintendent's report of several violations of federal and state law in *Casey v. West Las Vegas Independent School District*, 473 F.3d 1323 (10th Cir. 2007), Mr. Hogan's complaint arose out of a core duty of his employment. As director of UTOPIA's operations and a regular and active participant in board and executive committee meetings, Mr. Hogan's responsibilities included disclosing potential conflicts of interest that he believed could harm UTOPIA. And unlike the teachers' complaints we held protected in *Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192 (10th Cir. 2007), Mr. Hogan never discussed anything outside of work or after-hours; wasn't concerned his employer was curtailing the First Amendment rights of its employees; and instead simply worried about something that directly impacted his job as UTOPIA's Director of Operations.

*

Next we consider Mr. Hogan's state law wrongful discharge claim. To prevail under this common law tort, a plaintiff must show he was fired for engaging in conduct that implicates a clear and substantial public policy. *See United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 730 (10th Cir. 2006); *Peterson v. Browning*, 832 P.2d 1280, 1284 (Utah 1992).

Before the district court, Mr. Hogan argued that the tort extends its protections to workers like him who, though labeled independent contractors, are in fact employees serving fixed terms of employment. The district court, however, rejected Mr. Hogan's argument at the motion to dismiss stage, holding that the tort protects *only at-will* employees and that, whatever he may have been, Mr. Hogan was never an *at-will* employee.

> With this we are unable to agree. Under Utah law,
>
> all employers have a duty not to terminate any employee, whether the employee is at-will or protected by an express or implied employment contract, in violation of clear and substantial public policy. If an employer breaches that duty, an employee has a tort cause of action against the employer for wrongful discharge.

*Touchard v. La-Z-Boy Inc.*, 148 P.3d 945, 948 (Utah 2006) (citations and internal quotation marks omitted). Indeed, on appeal UTOPIA contests none of this, nowhere attempting to defend the district court's rationale for dismissing Mr. Hogan's claim.

-6-

Instead, UTOPIA asks us to affirm on an alternative ground. The organization notes that Utah has yet to extend wrongful discharge protections to independent contractors, and it points to the fact that Mr. Hogan admitted in his amended complaint that he was an independent contractor.

With this we can agree only in part. It is surely true that Mr. Hogan's amended complaint alleges he formed an agreement with UTOPIA to perform services as an independent contractor. But Mr. Hogan's amended complaint *also* proceeds to allege that as a matter of substance he was really treated as an employee. *See, e.g.*, Am. Compl. ¶¶16-32. And under Utah law, employers are generally accountable to those they hire based on the reality of the relationship regardless of the formal labels they attach to it. *See Petro-Hunt, LLC v. Dep't of Workforce Servs.*, 197 P.3d 107, 116 (Utah 2008); *Utah Home Fire Ins. v. Manning*, 985 P.2d 243, 246 (Utah 1999); *Averett v. Grange*, 909 P.2d 246, 249-50 (Utah 1995); *Bennett v. Indus. Comm'n of Utah*, 726 P.2d 427, 429-30 (Utah 1986).

Taking the amended complaint's allegations as true, moreover, a reasonable jury *could* find Mr. Hogan was in reality an employee rather than an independent contractor. In determining whether an individual qualifies as an employee or independent contractor in the context of Utah's Workers' Compensation Act, Utah courts "focus[] on whether the employer had the right to control the worker." *Manning*, 985 P.2d at 246. Many factors may be relevant to this inquiry — such

as whether the employer engages in "actual supervision of the worker, the extent of the supervision, the method of payment, the furnishing of equipment for the worker, and the right to terminate the worker." *Bennett*, 726 P.2d at 430. But the point always remains that, "[r]egardless of how the parties intended to structure their relationship, a worker is considered to have been an employee if the employer had the right to control the worker's manner or method of executing or carrying out the work." *Manning*, 985 P.2d at 246. The same essential analysis applies under Utah's Employment Security Act. *See, e.g.*, *Petro-Hunt*, 197 P.3d at 115-16. And no one before us disputes that the same analysis should apply here, in the wrongful discharge context.

Looking to the realities of the parties' relationship, at least as alleged in the amended complaint, they suggest UTOPIA's relationship with Mr. Hogan involved a considerable degree of control. The amended complaint alleges Mr. Hogan served UTOPIA alone: he had no other clients. It alleges that, as Director of Operations, Mr. Hogan hired and trained other (bona fide) UTOPIA employees. It alleges that he was not required to provide a trade license or his own equipment, and that he was required to submit to UTOPIA's direction and work out of its offices. *See* Am. Compl. ¶¶16-32. All this suggests that, though he was hired as an independent contractor, in reality Mr. Hogan served as an employee. At least a reasonable jury could find as much on the facts alleged.

UTOPIA replies by pointing to two out-of-circuit, unpublished cases —
*Pray v. C.A. Short Co.*, No. 99-1037, 2000 WL 302767 (6th Cir. Mar. 17, 2000),
and *Mid-South Institute of Self Defense Shooting, Inc. v. Habermehl*, No. 98-
6528, 2000 WL 924598 (6th Cir. June 26, 2000). But neither helps its cause. In
both cases the plaintiffs admitted they were independent contractors without
alleging any facts suggesting otherwise. Here, by contrast, the amended
complaint alleges that Mr. Hogan was hired nominally as an independent
contractor but continues to allege that, in reality, he was an employee, averring
specific facts in support of that allegation.

Even if Mr. Hogan does qualify as an employee who may bring a wrongful
discharge claim under Utah law, UTOPIA insists the amended complaint still fails
to satisfy the essential elements of the tort. In particular, UTOPIA insists that
Mr. Hogan hasn't identified any clear and substantial public policy implicated by
his termination, as he must to state a claim. This, however, is UTOPIA's *second*
alternative basis for affirmance, yet another ground the district court did not rely
on in its dismissal order, and one on which both sides present compelling
arguments. In these circumstances, we think the more prudent course isn't to
barrel on without any help from the district court, risking an improvident decision
in the process, but to remand the claim to allow the district court to consider the
parties' arguments in the first instance.

*

With that, we arrive at Mr. Hogan's whistleblower claim under Utah Code Ann. § 67-21-3. Here the parties' arguments before the district court began in a familiar fashion. In its motion to dismiss, UTOPIA argued that the statute protects only employees, not independent contractors, and that Mr. Hogan is an independent contractor. But for reasons that remain unclear, in his opposition to the motion to dismiss Mr. Hogan didn't argue that he was, in reality, an employee — as he had in response to UTOPIA's efforts to dismiss his wrongful discharge claim. Instead, Mr. Hogan argued *only* that independent contractors are entitled as a matter of law to bring whistleblower claims.

When the district court rejected that argument and granted the motion to dismiss, Mr. Hogan asked the court to reconsider its ruling, finally introducing the argument that he was really an employee, not an independent contractor. But the court declined the invitation to take up this argument on this claim, explaining that "[t]his is a new argument Plaintiff did not assert in opposition" to the motion to dismiss, even though it was fully available to him (indeed fully known to him, as his arguments to the district court on the wrongful discharge claim show). Aplt. App. at 47.

Whether Mr. Hogan proceeded as he did because he wished to make new law in this area, or for some other reason, we do not profess to know. We don't doubt the district court *could have* stepped in and chosen to consider his

"employee" argument if it had wished to do so. But neither can we say the court was legally obliged to make an argument for Mr. Hogan that he failed to make for himself in a timely fashion. *See generally Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 722 (10th Cir. 1993) ("[A]n untimely motion, by itself, is not sufficient to preserve an issue for appellate review."); *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1129-30 (10th Cir. 2011).

\*

Next comes Mr. Hogan's promissory estoppel claim. Mr. Hogan argues that by naming him Director of Operations in early 2011 and by discussing a succession plan that involved the possibility of Mr. Hogan staying on with UTOPIA until May 2012, UTOPIA "impliedly" promised that Mr. Hogan's contract would be renewed through May 2012. But Utah courts have consistently emphasized that promissory estoppel claims must be supported by evidence of a reasonably certain and definite promise; a plaintiff's subjective expectations alone are not enough. *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1022 (10th Cir. 2002); *Nunley v. Westates Casing Servs., Inc.*, 989 P.2d 1077, 1089 (Utah 1999). And in this case there are no well pleaded facts suggesting any more than that Mr. Hogan harbored a subjective belief renewal would be forthcoming. Indeed, before us Mr. Hogan relies on his allegation that he believed his contract would be renewed. Am. Compl. ¶ 36. More than this, he notes merely that he was promoted before he left and that the parties discussed, but never settled on, a

-11-

succession plan. *Id.* at ¶¶ 36-38, 192-93. Even taken on their own terms, these allegations do not suggest UTOPIA made a reasonably certain and definite promise of a contract renewal — whatever Mr. Hogan may have subjectively thought likely to happen. *See, e.g.*, *Rosinski v. Elec. Data Sys. Corp.*, 770 F. Supp. 359, 362 (E.D. Mich. 1990) ("[T]he enforceability of an implied promise is dependent on the legitimacy of the employee's expectation in light of the employer's statements and policies. Subjective expectancy of continued employment does not justify [that expectation]." (internal citations omitted)).

*

That leaves only UTOPIA's cross-appeal. At summary judgment the district court found for Mr. Hogan on his claims for breach of contract and breach of the implied covenant of good faith and fair dealing and awarded him $23,000. UTOPIA argues that disputed issues of material fact exist that should have precluded the entry of summary judgment. Specifically, it argues that a reasonable jury could believe that Mr. Hogan materially breached the contract first and, in this way, excused any later breach by UTOPIA. We've reviewed the record, however, and can find no fault with the district court's conclusion that the undisputed facts show just the opposite — that UTOPIA, not Mr. Hogan, breached the agreement first. Neither do we believe we can improve on the district court's careful 13-page analysis on this score and so we adopt its opinion on this question as our own.

-12-

*

Mr. Hogan's wrongful discharge claim is remanded for further proceedings consistent with what we've outlined above. In all other respects, the district court's judgment is affirmed.

ENTERED FOR THE COURT

Neil M. Gorsuch
Circuit Judge